FIFTH DIVISION
December 14, 2007

Nos. 1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

| | | |
|---|---|---|
| LASALLE NATIONAL BANK, as Trustee under Trust Agreement known as Trust No. A7710727006, and MICHELE KOSOVICH, Special Administrator of the Estate of Dolores Witt, | ) ) ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellants and Cross-Appellees, | ) ) ) ) | |
| v. | ) ) | No. 02 CH 4813 |
| JOHN C. WILLIS, | ) ) | Honorable Dennis J. Burke, |
| Defendant-Appellee and Cross-Appellant, | ) ) ) | Judge Presiding. |
| and | ) ) | |
| QUALITY EXCAVATION, INC., | ) ) ) | |
| Defendant. | ) | |

---

| | |
|---|---|
| JOHN C. WILLIS, | ) ) |
| Counterplaintiff-Counterdefendant, | ) ) |
| v. | ) ) |
| QUALITY EXCAVATION, INC., | ) ) |
| Counterdefendant-Counterplaintiff. | ) |

---

| | |
|---|---|
| LASALLE NATIONAL BANK, as Trustee under Trust Agreement known as Trust No. A7710727006, and MICHELE KOSOVICH, Special Administrator of the Estate of Dolores Witt, | ) ) ) ) |

1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

|  | ) |
| Plaintiff-Respondents, | ) |
|  | ) |
| v. | ) |
|  | ) |
| JOHN C. WILLIS and QUALITY EXCAVATION, INC., | ) |
|  | ) |
| Defendants-Petitioner. | ) |

---

|  | ) |
| LASALLE NATIONAL BANK, as Trustee under | ) |
| Trust Agreement known as Trust No. A7710727006, | ) |
| and MICHELE KOSOVICH, Special Administrator of | ) |
| the Estate of Dolores Witt, | ) |
|  | ) |
| Plaintiffs-Appellees, | ) |
|  | ) |
| v. | ) |
|  | ) |
| JOHN C. WILLIS, | ) |
|  | ) |
| Defendant-Appellant, | ) |
|  | ) |
| and | ) |
|  | ) |
| QUALITY EXCAVATION, INC., | ) |
|  | ) |
| Defendant. | ) |

---

|  | ) |
| JOHN C. WILLIS, | ) |
|  | ) |
| Cross-Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| QUALITY EXCAVATION, INC., | ) |
|  | ) |
| Cross-Defendant. | ) |

1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

PRESIDING JUSTICE FITZGERALD SMITH delivered the opinion of the court:

John Willis bought property neighboring a house in Chicago owned by long-time resident Dolores Witt. He hired Quality Excavation, Inc., to demolish the structure on his property and to excavate the site. Work done on Willis's property allegedly used improper shoring and damaged Witt's house, forcing Witt to evacuate her home of nearly 80 years and, ultimately, to sell the property. These three consolidated cases arose from the property damage to Witt's house.

In the initial appeal, No. 1-06-3564, plaintiffs LaSalle National Bank, as Trustee under Trust Agreement known as Trust No. A7710727006 (Trustee), and Michele Kosovich, special administrator of the estate of Dolores Witt (collectively, plaintiffs), appeal from the circuit court's order barring and dismissing with prejudice claims for punitive damages against defendant and counterplaintiff-counterdefendant John Willis (defendant or Willis). On appeal, plaintiffs contend that their claims for punitive damages survive Witt's death in order to sanction Willis's wrongful conduct and to provide a complete remedy. For the reasons that follow, we affirm the ruling of the circuit court.

The appeals in the cross-actions involve issues relating to motions *in limine* and they come before this court as permissive interlocutory appeals pursuant to Supreme Court Rule 308. 155 Ill. 2d R. 308. In appeal No. 1-06-3616, defendant and counterdefendant-counterplaintiff Quality Excavation, Inc. (defendant or Quality), contends that the circuit court erred by not granting its motion *in limine* to bar Willis from pursuing a claim for punitive damages against it. The certified question in this appeal asks this court whether Willis may seek punitive damages when he did not obtain leave of the court in compliance with section 2-604.1 of the Code of Civil Procedure

-3-

1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

(Code) (735 ILCS 5/2-604.1 (West 2002)).

Finally, in appeal No. 1-06-3619, Willis contends that the court improperly ruled that the applicable measure of damages was the cost of repair to Witt's property. The certified question in this appeal asks if the proper measure of property damages to a structure that no longer exists is the reasonable expense of necessary repairs, as set forth in Illinois Pattern Jury Instructions, Civil, No. 30.17 (2005) (hereinafter IPI Civil (2005) No. 30.17), or if damages are correctly measured by the difference between the fair market value of real property immediately before the occurrence and its fair market value immediately after the occurrence, as set forth in Illinois Pattern Jury Instructions, Civil, No. 30.18 (2005) (hereinafter IPI Civil (2005) No. 30.18). We address each of these appeals in turn and answer the first certified question in the negative; in the second, we affirm the court's ruling by answering that the proper measure of damages is that provided in IPI Civil (2005) No. 30.17.

BACKGROUND

Factual Background

According to the pleadings, Dolores Witt inherited the property located at 2323 North Southport, in Chicago, from her parents and she was the owner of the property as the beneficiary of LaSalle National Bank Land Trust No. A7710717006, which held the legal title to the property. Witt, who was born in 1919, moved into the house at 2323 North Southport by 1922 and she lived there until she was forced to move in 2001.

In 1999, Willis bought the property located at 2325 North Southport, which was neighboring Witt's to the immediate north. In 2001, Willis acted as his own general contractor

-4-

1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

and caused the house at 2325 North Southport to be torn down. He replaced it with a $2 million residence for himself. Willis hired Quality to do the demolition of the then-existing house at 2325 North Southport and the shoring and excavation work preparatory to the construction of his new residence.

Starting in August 2000, Witt received various communications from Willis concerning his planned demolition and construction. First, Witt received a letter from Willis regarding the zoning on his property and seeking her consent to a zoning change that would allow him to build a three-story structure. In December 2000, Witt received a second letter from Willis, which was predated to November 2000. In that letter, Willis informed Witt that demolition and construction on his property would begin in the near future. That letter also concerned the new building's set-back and a decrease in the side yard between Willis's property and Witt's property.

In January 2001, Witt received a letter from Willis's attorney, dated the previous month, seeking a "zoning exception" to reduce the size of Willis's front yard and the side yard between their properties. On January 16, 2001, Witt wrote a letter to the zoning department, objecting to Willis's request for an exception. Willis later told Witt that he would file suit against her for a purported encroachment of her house onto his property.

The following month, Willis hired Quality to demolish the then-existing house at 2325 North Southport and to excavate the property for a basement foundation. Defendants allegedly intended that the excavation would be deeper than Witt's house and less than 21 inches from her foundation. On February 2, 2001, the price for Quality's work on Willis' property did not include the cost of the shoring.

In March 2001, Witt received another letter from Willis, seeking her permission for a zoning exception and attempting to avoid legal action against her. In that letter, Willis promised that certain work, including the removal of the old walkway and steps, would be "performed with extreme care causing no harm to your property." Witt agreed to the zoning exception.

Later that month, John Barrett, the president of Quality, determined that shoring would be necessary to protect Witt's house before the excavation of Willis' property and that the shoring would have to be reinforced or braced. Toward the end of March, Willis and Barrett discussed various shoring methods and the need for reinforcement or bracing to protect Witt's house. Willis told Barrett that there was no need to protect Witt's house because he planned to buy the property and tear down the house on it. Willis insisted that a cheaper shoring method, without bracing, be used. Barrett warned Willis, who allegedly understood the consequences of proceeding in that manner, that it would result in damage to Witt's house but would prevent it from collapsing onto Willis' property. Willis assured Barrett that he would accept full responsibility and all liability for any damage to Witt's house resulting from the shoring method that he insisted be used.

Grace McNally, a co-owner of Quality, was asked by Barrett to prepare a document memorializing Willis' choice of shoring. On March 29, 2001, Willis signed a shoring agreement, in which he was referred to as "Developer." In the agreement, Willis acknowledged the advice he received from Barrett, that there might be a "possible shift" to the property, that the choice of shoring was based on that information, and that he, Willis, accepted "full responsibility and liability" for damage to Witt's house. In the shoring agreement, Willis also stated that he intended to assume ownership of the Witt property with "future plans to demolish" the house.

1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

On or about March 26, 2001, Quality began demolition of the structure at 2325 North Southport. After the demolition was completed and before excavation began, Quality installed the unbraced sheet pile shoring as instructed by Willis. The manner in which the piles were driven into the ground allegedly caused vibrations that caused Witt's house to shake and vibrate. The shaking and vibrations, soil shifting, and loss of lateral and subjacent ground support damaged Witt's house in various ways; allegedly, it caused numerous cracks, fractures, and crevices to appear in the ceiling or walls of various rooms of Witt's house, as well as the separation of the back porch from the building. It also allegedly caused the foundation of the house to lean and the building to become "unstable, structurally unsound and in threat of collapse" unless costly repairs were made. Throughout the demolition, shoring, and excavation at 2325 North Southport, which was conducted by Quality at Willis' direction, debris allegedly was allowed to fall onto Witt's property or was intentionally moved onto her property.

In April 2001, Witt contacted the insurance company that had issued her homeowner's insurance. The insurance company sent an engineer to inspect the house. On or about April 13, an engineering and architectural firm started an investigation to determine the cause of the recent damage to Witt's house. According to their report, the damage was "due to movement of the sheet pile wall which allowed the soil under foundation wall to move." That movement caused the foundation and wall to settle; vibration from the pile driving was a subsidiary effect that contributed to the damage. The report further stated that the building might be in "an unstable condition," and further movement was anticipated. Following the inspection, Witt was told to vacate her house immediately because it was unsafe. A construction company estimated that

1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

repair of the structural damage to Witt's house would cost $148,750. Witt's insurance company estimated the cost of repairs to the exterior to be more than $54,787.

On April 16, 2001, Witt warned her first-floor tenants that the building had been found structurally unsound and informed them that they would have to move. A few days later, the tenants moved out. Witt also was forced to move out of her house. She stayed with her daughter until May 1, 2001, when she moved into a retirement home on North Southport. Witt left her furniture in her house and intended to return there to live as soon as she could have the house repaired.

On or about May 16, 2001, Witt received another letter from Willis. In that letter, Willis acknowledged that he had been informed that Witt's house was damaged "from the excavation work performed on [his] property" and he apologized for the "inconvenience." Willis then stated that he learned of Witt's purported interest in selling her property and made an offer to buy her property and building for $385,000, an amount he termed fair market value. Willis enclosed an executed real estate contract with the letter.

Later, in August 2001, Willis allegedly caused another individual to contact Witt with the aim of purchasing her property for $395,000. In a real estate sales contract forwarded by mail, the purported purchaser identified himself as "Albert Woo or his assignee."

Witt's insurance coverage did not include damage due to soil movement and she lacked the funds to make the necessary repairs to her house. Because she was burdened with the additional costs of other housing, she ultimately sold her house. On September 26, 2002, Witt agreed to sell her property for $450,000. Although Witt's property had been listed for sale, Willis did not make

1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

an offer to buy it.

Procedural History

In March 2002, Witt and the Trustee filed a multicount complaint against defendants. Witt died on July 2, 2003. On September 9, 2003, Witt's daughter, Michele Kosovich, was appointed special administrator of her estate.

In December 2003, plaintiffs filed a second amended complaint. At that time, they also sought leave of court, pursuant to section 2-604.1 of the Code (735 ILCS 5/2-604.1 (West 2002)), to include a count for punitive damages directed at both defendants. Both defendants opposed the request. In March 2004, the court entered an order denying the request as to Quality, but allowing plaintiffs to seek punitive damages against Willis. The court also directed defendants to respond to the second amended complaint.

Plaintiffs' second amended complaint included seven counts for: violations of the Adjacent Landowner Excavation Protection Act (765 ILCS 140/1 (West 2002)); negligence; (alternatively) knowing damage to property; fraud; trespass; unreasonable intrusion on the right of privacy; and constructive eviction.

In April 2004, Willis moved to strike and dismiss count III of the second amended complaint, for knowing damage to property, in which plaintiffs sought punitive damages. Willis based his motion upon the principle that a claim for punitive damages does not survive the death of the decedent. In June 2004, after a hearing and argument on the motion, the court denied Willis's motion.

In December 2004, Willis moved for summary judgment on the issues of survivability of

-9-

punitive damages and the proper measure of damages. The motion was subsequently denied.

In 2005, after the case was assigned to another judge, Willis again moved for summary judgment on the same grounds that had previously been denied by the first judge hearing the case. In December 2005, the motion was again denied, but with the reservation made by the court to determine the proper measure of damages at trial.

In June 2006, Willis, who, during the course of the litigation had filed a cross-complaint against Quality, moved for an evidentiary hearing under section 2-604.1 of the Code. The motion was later denied, but again the judge reserved a ruling on whether there was sufficient evidence to permit plaintiffs to present argument to the jury in support of an award of punitive damages. Reference to any claim for punitive damages was barred until such ruling.

On November 1, 2006, the court struck count III of plaintiffs' second amended complaint with leave to amend before November 3, 2006. On November 3, 2006, plaintiffs filed a third amended complaint, which Willis subsequently answered.

The third amended complaint contained three counts, alleging: violations of the Adjacent Landowner Excavation Protection Act (Act) (765 ILCS 140/1 (West 2002)); negligence; and "willful and wanton" conduct. Among specific violations of the Act alleged were: defendants' failures, under section 1(1) of the Act, to give Witt notice that the excavation at 2325 North Southport would be deeper than the foundation of her house and less than 21 inches from her foundation, and to give Witt license to enter onto 2325 North Southport so that she would in no event have less than 30 days in which to take measures to protect her home from damage. See 765 ILCS 140/1(1) (West 2002). Plaintiffs alleged that defendants violated other sections of the

1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

Act in that defendants failed to take reasonable care and precautions to protect Witt's property from damage (see 765 ILCS 140/1(3) (West 2002)), and that defendants were strictly required to protect Witt's house and property without cost to Witt, by furnishing lateral and subjacent support to Witt's house to protect it from damage by the excavation at 2325 North Southport (see 765 ILCS 140/1(5) (West 2002)). Plaintiffs alleged, in the second count, that defendants were negligent in numerous ways that were consistent with their alleged failures under the Act and, in the third count, that Willis engaged in a course of conduct showing an utter indifference to or conscious disregard for the safety of Witt's property or deliberate intention to harm Witt's home and property. They further alleged that, as a proximate result of defendants' violations and Willis' conduct: Witt's house was badly damaged, resulting in the need for costly repairs; Witt was required to vacate her house and incur expenses of other, additional living quarters; Witt's tenants were required to vacate the premises, thereby depriving Witt of their rent payments; and Witt and her land trustee were damaged.

The case was set for trial in November 2006, and the parties were to submit all motions *in limine* by the start of that month. One of Willis's motions *in limine* requested that the court bar all evidence of the cost of repair damages. When the case was subsequently called for trial, the court heard numerous motions *in limine* and made provisional rulings on a number of those motions. Among other things, the court was asked to make a definitive ruling on the issue of punitive damages. The court denied Willis' motion as to evidence of the cost of repair damages, ruling that the proper measure of damages was that set forth in IPI Civil (2005) No. 30.17, which instructs the jury to find damages based on the cost of repair. The court further ruled that

1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

punitive damages to an estate where somebody has died during litigation were barred under Illinois Supreme Court precedent. The court made its ruling applicable to count III of both the second and third amended complaints. Additionally, Quality presented a motion *in limine* seeking to bar Willis from pursuing his claims for punitive damages, based on Willis' failure to ask leave of court, as required by section 2-604.1 of the Code, prior to filing the claims for punitive damages in his second amended cross-complaint.

Willis subsequently filed a motion for reconsideration of the ruling concerning the proper measure of damages.

On December 4, 2006, the court entered a written order barring plaintiffs' claim for punitive damages under Froud v. Celotex Corp., 98 Ill. 2d 324, 456 N.E.2d 131 (1983). In the order, the court also: dismissed with prejudice the claims for punitive damages in the third amended complaint; found the proper measure of damages in the case to be the cost of repairs pursuant to IPI Civil (2005) No. 30.17; stated the judgment was final as to all of plaintiffs' claims for punitive damages against Willis; expressly found that there was no just reason to delay enforcement or appeal of the order being entered or the order entered on November 1, 2006, dismissing count III of the second amended complaint; vacated the July 13, 2006, order (denying Willis's motion for an evidentiary hearing under section 2-604.1 of the Code); and stayed trial of essentially all pending claims (including all plaintiffs' remaining claims against Willis, Willis's claims set forth in his cross-complaint, and Quality's counterclaims and all affirmative defenses as to Willis's claims) and all motions *in limine* that had been reserved for ruling. The same day, the court reserved ruling on Quality's motion *in limine* but certified the question for appeal.

-12-

1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

Also on December 4, the court denied Willis's motion for reconsideration. In so doing, the court stated its disagreement with the holding in Ceres Terminals, Inc. v. Chicago City Bank & Trust Co., 259 Ill. App. 3d 836, 635 N.E.2d 485 (1994), relied on by Willis and, recognizing the difference in opinion, certified the question of the proper measure of damages for appeal.

On December 15, 2006, the court entered an order *nunc pro tunc* December 4, 2006, certifying, pursuant to Rule 308, the question of the proper measure of damages.

DISCUSSION

Appeal No. 1-06-3565

Initially, plaintiffs appeal from the dismissal of all their claims for punitive damages. Specifically, they appeal from the November 1, 2006, order dismissing count III of the second amended complaint and the December 4, 2006, order dismissing with prejudice all claims for punitive damages in the third amended complaint.

At the outset, we note that plaintiffs, citing Stojkovich v. Monadnock Building, 281 Ill. App. 3d 733, 666 N.E.2d 704 (1996), maintain the proper standard of review is whether there is sufficient evidentiary material, when viewed in its light most favorable to the plaintiffs, to establish a reasonable likelihood of proof at trial sufficient to support an award of punitive damages. Although Willis does not explicitly challenge plaintiffs' statement of the standard of review, he asserts that this court is bound by the decisions of our supreme court: he relies upon the binding authority of those decisions, which he contends is contrary to plaintiffs' position and, characterizing plaintiffs' authorities as persuasive, he asserts that this issue presents a question of law.

-13-

1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

It is true that the court in Stojkovich quotes section 2-604.1 of the Code, which states that a pretrial motion to amend the complaint to seek punitive damages shall be allowed, after a hearing on such motion, " 'if the plaintiff establishes at such hearing a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages.' " Stojkovich, 281 Ill. App. 3d at 741, quoting 735 ILCS 5/2-604.1 (West 1994). However, the court further stated that, before deciding the correctness of the denial of such motion, it needed to determine the standard of review. Stojkovich, 281 Ill. App. 3d at 742. It did so, noting:

"Whether the circumstances in a particular case justify an award of punitive damages is a question of law to be decided by the trial judge. [Citations.] When an issue is decided as a matter of law, review of a trial court's decision on the matter is generally *de novo*. [Citation.] The determination of whether the facts of a given case justify the imposition of punitive damages is a question of law; however, it has been uniformly held that an abuse of discretion standard will be applied on review. [Citations.] *** However, when, as in this case, the trial court makes its determination based upon documentary submissions only, *** we have before us all that was before the trial court. When the only question before a court is the legal conclusion to be drawn from a given set of facts and the credibility of witnesses is not in issue, review of a trial court's holding is *de novo*. [Citation.] Consequently, we will apply a *de*

-14-

1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

*novo* standard of review in this case." Stojkovich, 281 Ill. App. 3d

at 742-43.

The question here, too, involves the legal conclusion drawn by the court; accordingly, our review is *de novo*. See Stojkovich, 281 Ill. App. 3d at 743.

Plaintiffs contend that dismissal of their claims for punitive damages was improper because the claims survive Witt's death. We disagree.

The Survival Act provides, in relevant part: "In addition to the actions which survive by the common law, the following also survive: *** actions to recover damages for an injury to real or personal property." 755 ILCS 5/27-6 (West 2002). The survival statute, however, has not been held to authorize the award of punitive damages. Mattyasovszky v. West Towns Bus Co., 61 Ill. 2d 31, 33, 330 N.E.2d 509 (1975).

In Mattyasovszky, our supreme court considered whether punitive damages are recoverable under the Survival Act and whether there is a common law action for wrongful death that includes the element of punitive damages. Mattyasovszky, 61 Ill. 2d at 33. There, the plaintiff's decedent was a 12-year-old who was killed while exiting a bus by the rear door; after finding the defendant guilty of willful and wanton conduct, the jury awarded the plaintiff punitive damages in addition to pecuniary damages. The supreme court affirmed the appellate court's reversal of the award for punitive damages and ultimately decided that punitive damages are not recoverable under the Survival Act. Mattyasovszky, 61 Ill. 2d at 37.

The plaintiff in Mattyasovszky relied upon the court's earlier decision in Murphy v. Martin Oil Co., 56 Ill. 2d 423, 308 N.E.2d 583 (1974), in which recovery for a decedent's pain and

-15-

1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

suffering was authorized. In rejecting the plaintiff's position, the court stated that Murphy had "emphasized the *compensatory* nature of damages authorized under the Survival Act" and found nothing therein "which suggests a change in the law of this State which for more than a hundred years has limited recovery under the Survival Act to compensatory damages." (Emphasis added.) Mattyasovszky, 61 Ill. 2d at 33. The court also noted that decisions expanding the right to recover under the Survival Act emphasized the compensatory nature of the recovery that it authorized. Mattyasovszky, 61 Ill. 2d at 34.

In also rejecting the plaintiff's "insistence that a common law right to recover punitive damages should now be judicially established" (Mattyasovszky, 61 Ill. 2d at 35), the court considered the objectives of awarding punitive damages (Mattyasovszky, 61 Ill. 2d at 35). Although the deterrence and punishment objectives are the same as those motivating criminal law, awards of punitive damages in civil cases are distinguishable in that the conduct giving rise to the imposition of the punishment, unlike in criminal cases, is not clearly defined. Mattyasovszky, 61 Ill. 2d at 35-36. The court also recognized the strong equitable considerations that were present in two cases relied on by the plaintiff, Moragne v. States Marine Lines, Inc., 398 U.S. 375, 26 L. Ed. 2d 339, 90 S. Ct. 1772 (1970) (creating common law remedy for wrongful death in unique situation where no remedy existed), and Gaudette v. Webb, 362 Mass. 60, 284 N.E.2d 222 (1972) (involving a revised construction of the limitations period so that minor children would not be barred from maintaining a wrongful death action where responsible adult failed to take action at proper time). However, the court found the case before it, which already gave rise to two distinct statutory actions, did not present such equitable considerations. Mattyasovszky, 61 Ill. 2d

-16-

1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

at 37.

Several years later, in Froud, the supreme court declined an explicit invitation to overrule its earlier decision in Mattyasovszky. Froud, 98 Ill. 2d at 335. Rather, the court there found that its holding in Mattyasovszky should be regarded as having been incorporated into the Survival Act. Froud, 98 Ill. 2d at 336. In Froud, the court addressed the question of whether a claim for punitive damages in a common law action for personal injuries abates at the death of the injured person and decided that it did. Froud, 98 Ill. 2d at 338. The plaintiffs, whose decedents were victims of asbestosis, alleged willful and wanton conduct on the part of the defendant corporations that sold and distributed asbestos products. Their claims for punitive damages had been dismissed on the basis that the Survival Act does not authorize survival of common law claims for such damages. Froud, 98 Ill. 2d at 329.

In Froud, the court rejected the plaintiffs' position that Mattyasovszky had either been implicitly overruled or distinguished by its subsequent decision in National Bank of Bloomington v. Norfolk & Western Ry. Co., 73 Ill. 2d 160, 383 N.E.2d 919 (1978).[1] Froud, 98 Ill. 2d at 329.

---

[1] Several years after Mattyasovszky, the court held in National Bank of Bloomington that a claim for punitive damages did survive where it was based upon an explicit statutory provision allowing the recovery of punitive damages. National Bank of Bloomington, 73 Ill. 2d at 174. There, however, a strongly worded dissent noted, among other things, that the plaintiff's cause of action had been brought under the public utilities and wrongful death statutes, but the majority had erroneously transformed the cause of action into one under the Survival Act. National Bank of Bloomington, 73 Ill. 2d at 180 (Ryan, J., dissenting).

-17-

1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

Rather, the court found its decisions in Mattyasovszky and National Bank to be reconcilable. Froud, 98 Ill. 2d at 330. While it had held in Mattyasovszky that a claim for punitive damages in a common law action did not survive and, no matter how outrageous the defendant's conduct was, such action was "recognized only where 'strong equitable considerations' existed such as the unavailability of any other remedy" (Froud, 98 Ill. 2d at 330, quoting Mattyasovszky, 61 Ill. 2d at 31, 37), the recovery of punitive damages in National Bank of Bloomington was upheld because it was based on an explicit provision in a statute that allowed the recovery of punitive damages (Froud, 98 Ill. 2d at 331). In reconciling the two decisions, the court read the National Bank of Bloomington holding to presume that, where the legislature had specifically provided for the recovery of exemplary damages as part of a comprehensive regulatory scheme, the legislature's intention was that the claim for a punitive award would survive the injured person's death. Froud, 98 Ill. 2d at 332. The court further distinguished National Bank of Bloomington by stating: "That claim is an integral component of the regulatory scheme and of the remedy which is available under it: it can no more be diminished by common law doctrines such as abatement than a statutory limitations period can be eroded by such equitable doctrines as tolling." Froud, 98 Ill. 2d at 332-33. The court further found the claim for punitive damages there was supported by the language of the statute at issue, which the legislature enacted with the intent to carry out the regulatory plan for public utilities. Froud, 98 Ill. 2d at 333. However, the court specifically noted that, while the Public Utilities Act provided for the survival of the actions it authorized, the National Bank of Bloomington holding did not require any interpretation of the Survival Act different from that given it in Mattyasovszky. Froud, 98 Ill. 2d at 333.

-18-

Further, the court in Froud also rejected the position that the Survival Act is, essentially, a neutral vehicle that does not either authorize or prohibit the survival of claims for punitive damages. Froud, 98 Ill. 2d at 334. Rather, the "Survival Act shields from abatement only those claims which are specifically set forth in it." Froud, 98 Ill. 2d at 334. In considering the scope of the Survival Act "unaided by a statutory regulatory scheme," the court acknowledged that it is not free to read into the Survival Act its own views about the type of claims which should be permitted to survive. Froud, 98 Ill. 2d at 334. For that reason, the court declined to overrule Mattyasovszky and "add to the scope of the Survival Act." Froud, 98 Ill. 2d at 335. Because there was no statutory basis to the award of punitive damages, under Mattyasovszky, the plaintiffs' claims did not survive the death of the injured persons. Froud, 98 Ill. 2d at 335.

Finally, the court stated that the legislature is the proper body to address policy-based arguments concerning the survival of awards of punitive damages. Froud, 98 Ill. 2d at 335. It noted that, although a bill to amend the Survival Act to provide for the survival of punitive damages had been introduced, it was defeated in committee: prior to the decision in Mattayasovszky, the Survival Act had been reenacted several times without modification and that decision had not been altered by any amendment in the statute. Froud, 98 Ill. 2d at 335-36. In fact, "the construction placed upon the Survival Act by Mattyasovszky should be regarded as having been incorporated in the Act." Froud, 98 Ill. 2d at 336. Therefore, any change in that construction by the supreme court would be tantamount to amending the statute, which was not within the power of the court to do. Froud, 98 Ill. 2d at 336. See also Ballweg v. City of Springfield, 114 Ill. 2d 107, 117, 499 N.E.2d 1373 (1986) ("Illinois law is clear that punitive

1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

damages are not recoverable under the Survival Act").

In the instant case, plaintiffs contend punitive damages are necessary to sanction wrongful conduct contrary to strong public policy and to provide a complete remedy. For support, plaintiffs rely almost entirely upon three appellate cases, Raisl v. Elwood Industries, Inc., 134 Ill. App. 3d 170, 479 N.E.2d 1106 (1985), Howe v. Clark Equipment Co., 104 Ill. App. 3d 45, 432 N.E.2d 621 (1982), and Penberthy v. Price, 281 Ill. App. 3d 16, 666 N.E.2d 352 (1996), apparently in an attempt to persuade this court that the majority of the appellate districts have expanded on the survivability of punitive damages. However, none of these three cases has direct application to the instant case.

In Raisl, the First District held that an action for retaliatory discharge survives the death of the discharged employee, reasoning that compensatory damages for the tort amounts to "personal property" within the meaning of the survival statute. Raisl, 134 Ill. App. 3d at 173. In considering the claims for punitive damages, the Raisl court interpreted Illinois Supreme Court precedent to hold that punitive damages survive when there is a statutory basis for the claims or when the claims "are an 'integral component of the regulatory scheme *and of the remedy which is available under it*'; or *** 'strong equitable considerations' advocate survival." (Emphasis added.) Raisl, 134 Ill. App. 3d at 175. The court admitted that neither the tort at issue nor punitive damages were "expressly" provided for in the statute under consideration, the Workers' Compensation Act, but stated that actions for retaliatory discharge were "based upon the public policy enunciated in" that statute. Raisl, 134 Ill. App. 3d at 175-76.

Here, however, unlike in Raisl, there is no statutory basis for plaintiffs' claims for punitive

-20-

1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

damages. Plaintiffs claim a statutory "association" for their claims, but they do not provide any pertinent authority that would show the existence of such "statutory comprehensive scheme" here, let alone any authority that would indicate such claims for punitive damages are an "integral component of the regulatory scheme." Rather, in the second amended complaint, the request for punitive damages was made pursuant to the claim, in the alternative, that Willis had knowingly damaged Witt's property; in the third amended complaint, the request was made pursuant to a claim of "willful and wanton" conduct on Willis's part. In neither instance was a statutory basis for punitive damages even pleaded. Plaintiffs, then, apparently rely on Raisl solely for its language addressing strong equitable considerations, but they do not discuss those considerations in any specificity in their appellate brief. Rather, plaintiffs rely on general assertions concerning policy, which, as discussed below, we find misplaced. Because we do not find any equitable considerations here that would rise to the level presented in Raisl, we find plaintiffs' reliance on Raisl unavailing. Therefore, under Froud, plaintiffs' common law claims for punitive damages do not survive Witt's death. See Froud, 98 Ill. 2d at 329.

Likewise, plaintiffs' reliance on the Fourth District's decision in Howe is similarly unavailing. There, the court treated the Survival Act as a mere conduit whereby a cause of action possessed by a decedent (for personal injuries) may be prosecuted by his personal representative, reasoning that, "by extension of logic," if statutory causes of action survive, so must common law causes. Howe, 104 Ill. App. 3d at 50. We note that the reasoning employed in Howe was rejected by our supreme court in Froud. See Froud, 98 Ill. 2d at 335; see also Burgess v. Clairol, Inc., 776 F. Supp. 1278, 1284 n.8 (N.D. Ill. 1991).

-21-

1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

Finally, the third appellate case relied on by plaintiffs, Penberthy, is readily distinguishable. There, the Fifth District decided that claims for punitive damages survived the death of the tortfeasor. Penberthy, 281 Ill. App. 3d at 21 (finding that the defendant's conduct, driving under the influence of alcohol, "unquestionably offends against a strong and clearly articulated public policy"). In the instant case, the survivability of claims involves the death of the plaintiff, Witt, not that of a defendant. Moreover, there is no strong public policy at issue here as was the policy against driving under the influence of alcohol that was operative in Penberthy. Accordingly, plaintiffs' reliance on Penberthy, like Raisl and Howe, is unavailing.

Further, plaintiffs' insistence upon a statutory "association" to their claims for punitive damages does not withstand examination. The arguments plaintiffs raise on appeal concern only the general policy of the statute, the Adjacent Landowner Excavation Protection Act, of which they alleged violations: they maintain that the public policy, as expressed therein, is to require a landowner, like Willis, to take reasonable care and precaution while excavating his own land to protect the adjoining land and structures from damage. Although plaintiffs do not cite the exact provisions to which they refer, they appear to rely upon the Act's notice and liability requirements. See 765 ILCS 140/1(1), (2) (West 2002) (providing that an owner who is intending to make an excavation give reasonable notice to the owner of adjoining land and that failure to comply with such provision makes the owner liable to the owner of adjacent property for any damage to the land or buildings arising from the excavation). However, again, plaintiffs point to nothing in the Act that would indicate an intent that punitive damages be assessed for violations of the Act. Without that, we are left with plaintiffs' mere allegations of statutory violations, which is not

-22-

sufficient in itself for the survival of punitive damages. Rather, there must be a statutory basis for the imposition of punitive damages before the survival of such may be considered. See Froud, 98 Ill. 2d at 335; see also National Bank of Bloomington, 73 Ill. 2d at 173-74. With the absence of any statutory provision authorizing the imposition of punitive damages for causing damage to an adjacent property by conducting an excavation, there is no basis upon which we could hold that punitive damages would survive Witt's death.

Plaintiffs also assert an additional public policy supports their claims for punitive damages: plaintiffs maintain that two other statutory provisions in sections of the Property Tax Code, the Senior Citizens Homestead Exemption (35 ILCS 200/15-170 (West 2002)) and the Senior Citizens Assessment Freeze Homestead Exemption (35 ILCS 200/15-172 (West 2002)), express the policy that senior citizens should be able to stay in their own homes as long as they desire. From this, plaintiffs claim that Willis, by ordering a course of action, *i.e.*, a cheaper type of excavation, that resulted in damages to Witt's home that she could not afford to repair, engaged in conduct that violated the policy of the latter two statutes. Whether this is a conscious attempt by plaintiffs to misdirect this court's attention, the policy reflected in these latter two statutes-- whatever it may be--is irrelevant to the considerations at hand. No violation of either statute was alleged in plaintiffs' second or third amended complaint. Accordingly, we would have no reason to consider any purported policies regarding senior citizens and their homes, which may or may not have been expressed in these statutes. Finally, plaintiffs' additional assertion that Willis's alleged conduct constituted a crime, that of criminal damage to property (see 720 ILCS 5/21-1(1)(a) (West 2002)), is likewise irrelevant. No criminal charges were brought against Willis, nor

1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

were such allegations raised in plaintiffs' complaints. Therefore, the circuit court properly dismissed all claims for punitive damages in plaintiffs' second and third amended complaints. Accordingly, the orders of November 1 and December 4, 2006, are affirmed as to the dismissal with prejudice of all plaintiffs' claims for punitive damages.

Appeal No. 1-06-3616

This appeal arises from Willis's cross-claims against Quality. In August 2005, Willis filed a seven-count second amended cross-complaint, which alleged, among other things, negligence (count IV) and contributory negligence (count V). The second amended cross-complaint also contained counts for common law fraud (count VI) and fraudulent concealment (count VII), in which Willis sought punitive damages against Quality. Prior to filing the second amended cross-complaint, Willis failed to file a pretrial motion seeking leave of court to claim punitive damages in either count VI or VII. Quality contends that Willis's failure to seek leave of court is contrary to the requirements set forth in section 2-604.1 of the Code.

In its orders of December 4 and 15, 2006, the circuit court certified the following question: "Is John Willis allowed to seek recovery for punitive damages in his second amended cross-complaint against Quality Excavation, when he has not sought leave of the Court in compliance with S.H.A. 735 ILCS 5/2-604.1?"

Quality does not explicitly set forth the pertinent standard of review initially, but it relies upon principles concerning statutory construction of section 2-604.1. Resolution of the certified question requires construction of section 2-604.1 of the Code and such resolution is pursuant to Supreme Court Rule 308. 155 Ill. 2d R. 308. Rule 308 provides: "When the trial court, in

-24-

1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

making an interlocutory order not otherwise appealable, finds that the order involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, the court shall so state in writing, identifying the question of law involved." 155 Ill. 2d R. 308(a). Thus, whether characterized as a matter of statutory construction, the issue raised in this appeal concerns a question of law under Rule 308. Therefore, review is *de novo*. Thompson v. Gordon, 221 Ill. 2d 414, 426, 851 N.E.2d 1231 (2006); see Stojkovich, 281 Ill. App. 3d at 742-43 (denial of pretrial motion to amend complaint pursuant to section 2-604.1, where determination is made upon documentary submissions, presents question of law, and involves legal conclusion to be drawn from given set of facts); see also Spires v. Mooney Motors, Inc., 229 Ill. App. 3d 917, 920, 595 N.E.2d 225 (1992) (effect of grant of motion pursuant to section 2-604.1 begins with the recognition that such order is interlocutory under Rule 308).

In response, Willis raises two points, both of which are based on his incorrect assumption that an abuse of discretion standard should be applied on review here. Willis first contends that this court should not consider the merits of Quality's appeal because Quality failed to provide a complete record for this court's review. He asserts that Quality failed to provide a transcript of the hearing or "to include any information in the record on appeal that enables the court to review the trial court's decision" as to his claims for punitive damages. Willis also claims, without reference to any authority, that the copy of Quality's motion *in limine* contained in the record is not signed or file-stamped and shows no evidence of service, and, therefore, Quality has not shown that the motion was ever properly before the court.

-25-

Willis's argument on these points fails for several reasons. As Quality points out in its reply, the record does, in fact, contain a transcript of the hearings held on November 29 and December 4, 2006, during which Quality raised its motion *in limine* and Willis responded orally to the motion. Moreover, the record reveals that, at the hearing on December 4, it was Willis's attorney, who, after stating that he had not had a chance to respond to Quality's motion, suggested: "[I]f your Honor wants to certify under [Rule] 308 a question for him, you know, okay." The court then received Quality's agreement to the certification, and Willis's attorney again agreed to proceed in that manner. Thus, the record provided us is sufficient for our review and it shows that Willis not only understood that the issue was before the court, he was the party to suggest its certification. Furthermore, contrary to Willis's assertion that the record is incomplete for review of the court's "decision," it is clear that the court did not issue any ruling on the question. Thus, as Quality points out in reply, the application of an abuse of discretion standard would make no sense where there was no ruling. Rather, as stated previously, this appeal presents a certified question, which is one of law and is reviewed *de novo*.

Section 2-604.1 of the Code provides in pertinent part:

> "In all actions on account of bodily injury or physical
>
> damage to property, based on negligence, or product liability based
>
> on any theory or doctrine, where punitive damages are permitted no
>
> complaint shall be filed containing a prayer for relief seeking
>
> punitive damages. However, a plaintiff may, pursuant to a pretrial
>
> motion and after a hearing before the court, amend the complaint to

1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

> include a prayer for relief seeking punitive damages. The court
>
> shall allow the motion to amend the complaint if the plaintiff
>
> establishes at such hearing a reasonable likelihood of proving facts
>
> at trial sufficient to support an award of punitive damages. Any
>
> motion to amend the complaint to include a prayer for relief seeking
>
> punitive damages shall be made not later than 30 days after the
>
> close of discovery. " 735 ILCS 5/2-604.1 (West 2002).

In enacting section 2-604.1, the General Assembly addressed certain concerns relating to punitive damage awards. Loitz v. Remington Arms Co., 138 Ill. 2d 404, 417, 563 N.E.2d 397 (1990). The purpose of punitive damages is not compensation, but punishment of the offender and deterrence by the wrongdoer and others, and punitive damages are not favored in the law. Loitz, 138 Ill. 2d at 414. Because punitive damages are awarded for reasons of retribution and deterrence, and have a penal nature, the amount of such an award is determined by more than consideration of the nature and extent of the claimant's loss. Loitz, 138 Ill. 2d at 416. The increasing frequency and amount of such awards directed more attention to them, resulting in the enactment of section 2-604.1. Loitz, 138 Ill. 2d at 416-17. That section was enacted to discourage plaintiffs from seeking and receiving punitive damage awards. McCann v. Presswood, 308 Ill. App. 3d 1068, 1071, 721 N.E.2d 811 (1999).

In the instant case, it is undisputed that Willis did not seek leave of court to plead punitive damages as required by section 2-604.1 of the Code. Rather, Willis asserts that he was not required to do so because his request for punitive damages was made in conjunction with

-27-

1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

intentional tort claims and, for that reason, section 2-604.1 does not apply. We disagree.

"[S]ection 2-604.1 precludes plaintiffs from requesting punitive damages on the face of any complaint based, even in part, on a negligence theory." McCann, 308 Ill. App. 3d at 1072. Rather, section 2-604.1 requires such plaintiff to file a pretrial motion and seek leave of court to include a prayer for relief seeking punitive damages. Penn v. Gerig, 334 Ill. App. 3d 345, 355-56, 778 N.E.2d 325 (2002). Because section 2-604.1 applies to an entire action, a prayer for punitive damages is prohibited where even part of the complaint sounds in negligence. Penn, 334 Ill. App. 3d at 356. In instances where negligence is pleaded, it is only with the court's leave, pursuant to section 2-604.1, that the plaintiff may amend the complaint upon a showing of facts sufficient to support a punitive damages award. McCann, 308 Ill. App. 3d at 1072.

Here, Willis's second amended cross-complaint involved a claim for property damage and it was based, in part, on theories of negligence. The second amended cross-complaint contained counts for negligence and contributory negligence. Again, section 2-604.1 provides that in all actions on account of physical damage to property, based on negligence, "where punitive damages are permitted no complaint shall be filed containing a prayer for relief seeking punitive damages." 735 ILCS 5/2-604.1 (West 2002). Thus, Willis's second amended cross-complaint failed to comply with section 2-604.1. Further, even in the counts brought under theories of intentional torts, Willis was prohibited from seeking punitive damages on the face of his complaint; rather, he was required to file a pretrial motion to request the court's permission to seek punitive damages. See McCann, 308 Ill. App. 3d at 1072; see also Penn, 334 Ill. App. 3d at 355-56.

Willis bases his position that section 2-604.1 does not apply on Voyles v. Sandia

-28-

1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

Mortgage Corp., 311 Ill. App. 3d 649, 724 N.E.2d 1276 (2000), *rev'd* 196 Ill. 2d 288, 751

N.E.2d 1126 (2001). There, the plaintiff alleged, among other things, negligence and tortious

interference with economic advantage and sought punitive damages against a mortgagee. The

court held that section 2-604.1, by its terms, applies to actions for bodily injury based on

negligence, but because the plaintiff pleaded intentional torts, section 2-604.1 did not apply to her

claims. Voyles, 311 Ill. App. 3d at 659-60.

Willis's reliance on Voyles is inadequate to support his claims. As Quality maintains,

Voyles does not control the instant case because it does not concern physical damage to property.

More importantly, however, Voyles is unsound authority because the appellate court's judgment

was reversed in its entirety by our supreme court. Voyles, 196 Ill. 2d at 301. Willis

acknowledges the reversal in a footnote, but he still maintains that the Second District's

interpretation of section 2-604.1 is "unaffected."

The appellate court's discussion of section 2-604.1 was comprised of the following:

"Defendant contends that plaintiff's prayer for punitive

damages is barred by section 2-604.1 of the Code *** Section 2-

604.1, by its terms, applies to actions for bodily injury based on

negligence or product liability. In this case, plaintiff has pleaded

and proved that defendant committed intentional torts and, thus,

section 2-604.1 does not apply." Voyles, 311 Ill. App. 3d at 659-

60.

The supreme court reversed the appellate court's judgment in its entirety and, in doing so, it

specifically rejected the plaintiff's claim as to the requirement that she show an intentional and unjustified interference by the defendant. Voyles, 196 Ill. 2d at 301. Given that, we fail to see how the appellate court's conclusion as to the nonapplicability of section 2-604.1 could remain as sound authority on this point, especially since it is based upon the determination that the plaintiff had sufficiently established the defendant's commission of such intentional tort. Accordingly, we reject Willis's assertion that the appellate court's "interpretation" of section 2-604.1 remains unaffected.

Rather, because Willis's second amended cross-complaint contained counts alleging negligence, section 2-604.1 was applicable to the entire action. See Penn, 334 Ill. App. 3d at 356; McCann, 308 Ill. App. 3d at 1072. Therefore, under section 2-604.1, any request for punitive damages contained on the face of the complaint was prohibited and, in order to request such damages, Willis was required to first file a pretrial motion to seek leave of court in order to do so. See Penn, 334 Ill. App. 3d at 356; McCann, 308 Ill. App. 3d at 1072. Thus, we answer the certified question presented in this appeal in the negative.

Appeal No. 1-06-3619

This appeal arises from the court's ruling on Willis's motion *in limine* to limit the evidence of damages to the diminution in value. The court denied the motion, ruling instead that the proper measure of damages was the cost of repair, as set forth in IPI Civil (2005) No. 30.17. Willis sought reconsideration in light of the decision in Ceres Terminals, Inc., which the court denied.

In its order of December 15, 2006, the circuit court reiterated its denial of Willis's motion

-30-

1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

to limit the evidence of damages to the diminution in value and it certified the following question for appeal: "Is the proper measure of property damages in this property damage case involving a structure that no longer exists the reasonable expense of necessary repairs as set forth in I.P.I. 30.17 as opposed to the difference between fair market value of the real property immediately before the occurrence and its fair market value immediately after the occurrence as set forth in I.P.I. 30.18?"

On appeal, Willis contends that the court improperly ruled that the correct measure of damages was that set forth in IPI Civil (2005) No. 30.17, which instructs the jury to find damages based on the cost of repair because, at the time that Witt's property was damaged, it was capable of repair. Willis contends that because Witt's house no longer exists, it is incapable of repair and, therefore, the proper measure of damages is the difference in the fair market value of the property before the injury property damage and the fair market value of the property immediately after the injury. He relies heavily upon the decision in Ceres Terminals, Inc.

Plaintiffs have not filed a separate response brief in this appeal, but they addressed the question of the proper measure of damages in their appellant's brief in appeal No. 1-06-3564. Pursuant to this court's order of May 10, 2007, plaintiffs' opening brief in appeal No. 1-06-3564 serves as their responsive brief in this appeal. Therein, plaintiffs contend that the court properly ruled as to the measure of damages. We agree.

IPI Civil (2005) No. 30.17 provides:

"The damage to real property, determined by the reasonable expense of necessary repairs to the property which was damaged

-31-

1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

> [and the value of loss of the use of the (building) (improvements) for the time reasonably required for the repair] [and the difference between the fair market value of the real property immediately before the occurrence and its fair market value immediately after the repairs]."

The Notes on Use state:

> "This element is to be inserted between the two paragraphs of IPI 30.01[2] when the evidence justifies its use. This instruction

_____

[2] IPI Civil (2005) No. 30.01, which concerns the measure of personal and property damages, reads:

> "If you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate him for any of the following elements of damages proved by the evidence to have resulted from the [negligence] [wrongful conduct] [of the defendant], [taking into consideration (the nature, extent and duration of the injury) (and) (the aggravation of any pre-existing ailment or condition)].
> *[Here insert the elements of damages which have a basis in the evidence]*
> Whether any of these elements of damages has been proved by the evidence is for you to determine."

1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

> must be used, in general, where the damages to real estate are not
>
> permanent.
>
> The first bracketed clause should be inserted where the
>
> evidence shows that the property was unable to be occupied, or
>
> used, during the period of repair. Proof as to the value of the loss
>
> of the use must be presented." IPI Civil (2005), No. 30.17, Notes
>
> on Use, at 135.

Illinois case law has been characterized as inconsistent in its application of the correct measure of damages for injuries to real property. First Baptist Church of Lombard v. Toll Highway Authority, 301 Ill. App. 3d 533, 544, 703 N.E.2d 978 (1998), citing Williams-Bowman Rubber Co. v. Industrial Maintenance, Welding & Machining Co., 677 F. Supp. 539, 541 (N.D. Ill. 1987); see also Williams-Bowman Rubber Co., 677 F. Supp. at 545 (despite varying results reached by Illinois courts, the Illinois Appellate Court essentially declines to follow early decision applying a diminution in property value measure of damages). Courts have concluded that the proper measure of damages for injuries to realty depends upon the nature of the injury involved. Williams-Bowman Rubber Co., 677 F. Supp. at 545; see also First Baptist Church of Lombard, 301 Ill. App. 3d at 544. While mindful of the general rule that tort damages for injury to real property are to be measured by the difference between the market value of the property before the injury and its value after the injury, courts have viewed such rules to be " 'guides only *** [that] should not be applied in an arbitrary, formulaic, or inflexible manner, particularly where to do so

-33-

1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

would not do substantial justice.' " <u>First Baptist Church of Lombard</u>, 301 Ill. App. 3d at 544, quoting <u>Myers v. Arnold</u>, 83 Ill. App. 3d 1, 7, 403 N.E.2d 316 (1980).

To characterize an injury to realty as permanent or temporary, courts must necessarily look to the nature of the thing injured. <u>Arras v. Columbia Quarry Co.</u>, 52 Ill. App. 3d 560, 565, 367 N.E.2d 580 (1977). In <u>Arras</u>, the defendant's blasting destroyed a well on the plaintiffs' property; at trial, the only evidence on the question of damages was expert testimony presented as to the cost of drilling a new well. There, the court rejected the defendant's position that the proper measure of damages was the diminution in the fair market value of the plaintiffs' property. <u>Arras</u>, 52 Ill. App. 3d at 564-65. Rather, the court adopted the approach taken by an Indiana court, which considered the proper measure of damages for injury to real estate, or to that which has no value apart from the real estate, to be the difference in the market value of the real estate before the injury and the market value of the real estate after the injury, in cases where the injury is permanent, and where the injury to the real estate is not permanent, then the measure of damages is the cost of restoration. <u>Arras</u>, 52 Ill. App. 3d at 564-65, quoting <u>General Outdoor Advertising Co. v. LaSalle Realty Corp.</u>, 141 Ind. App. 247, 265, 218 N.E.2d 141 (1966). Under that approach, the <u>Arras</u> court recognized the unique situation posed by the destruction of the well, specifically stating that the injury was abatable and it did not interpret the loss of productivity of the well to mean that the damage was permanent. <u>Arras</u>, 52 Ill. App. 3d at 565-66. In that situation, the court found persuasive the cost of repair standard that was applied in Illinois case law of subsidence due to mining operations. <u>Arras</u>, 52 Ill. App. 3d at 566.

Further, when a landowner has shown that he suffered a compensable injury, it is

-34-

necessary to examine the exact interest harmed. Myers, 83 Ill. App. 3d at 7. In a case involving the wrongful dumping of 60 to 80 truckloads of concrete on the plaintiffs' tract of land, the court determined that allowing a plaintiff to recover the lesser of the cost of repair or the diminution in market value may be appropriate where the interest that has been harmed is purely financial, such as land purchased as a business investment "with an eye towards speculation" or land held solely for the production of income. Myers, 83 Ill. App. 3d at 7. That same measure of damages was, however, found to be "painfully inadequate" when the land is held for a personal use such as a family residence and the harm may be corrected with a reasonable expenditure even though the expenditure exceeds the amount the land has diminished in value. Myers, 83 Ill. App. 3d at 7. In the latter instance, the full repair cost comes much closer to restoring what was actually lost and will not require the injured party to correct the harm with funds from his own pocket. Myers, 83 Ill. App. 3d at 7. In fact, application of the rule measuring diminution in market value could often force plaintiffs to sell their property to a defendant, effectually granting a private right of eminent domain and, thus, would inadequately protect the plaintiffs' legitimate interest in the use and enjoyment of their property. Myers, 83 Ill. App. 3d at 7. In Myers, the court stated that the damage was to realty held for personal rather than business use, the injury was capable of repair, and the repair could be accomplished without expending amounts wholly disproportionate to the value of the land, and it determined that the plaintiffs were entitled to recover the costs of repairing the damage to their property. Myers, 83 Ill. App. 3d at 8. See also First Baptist Church of Lombard, 301 Ill. App. 3d at 545 (test for application of cost-of-repair measure of damages is (1) whether the damage is to realty held for a personal rather than a business use; (2) whether the

-35-

1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

injury is capable of repair; and (3) whether the repair can be accomplished without expending amounts wholly disproportionate to the value of the land); Williams-Bowman Rubber Co., 677 F. Supp. at 545-46 (Illinois courts apply diminution in value rule or cost of repairs depending on certain factors including nature of the injury and whether repair is practicable).

In the instant case, the very scenario envisioned by the court in Myers occurred: Witt was forced to sell her home. See Myers, 83 Ill. App. 3d at 7. Here, as in Myers, the injured property was held for personal use; in fact, it was Witt's residence for almost 80 years. The damage could have been corrected with a reasonable expenditure. See Myers, 83 Ill. App. 3d at 7. Although such expenditure was beyond Witt's means, repairing Witt's house would have come close to restoring what was actually lost and would have prevented the loss of her home. See Myers, 83 Ill. App. 3d at 7. Because the house was capable of repair, the cost of repair was the appropriate measure of damages. See Myers, 83 Ill. App. 3d at 7.

Although Willis claims that Arras and Myers support his position, he relies primarily upon Ceres Terminals, Inc. However, we find Ceres Terminals, Inc. inapplicable because it concerned injury to commercial realty rather than to real property held for a personal use. It is further distinguishable in that it involved a lessor-lessee relationship, which is not present in the instant case.

In Ceres Terminals, Inc., the issues concerned a long-term lease with options for shorter-term renewals; the plaintiff was the lessee of about 16 acres of waterfront property, which contained a wooden warehouse and a metal warehouse, the exterior of which it was the lessor-defendants' duty to maintain and the interior of which it was the lessee's duty to maintain. There

-36-

1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

was protracted litigation in that case involving numerous other issues, including the plaintiff's exercise of its renewal option; the plaintiff remained on the subject property after the lease expired while it awaited the trial court's determination of the validity of its attempt to renew the lease. Ultimately, the lessor-defendants sought damages resulting from the plaintiff's alleged failure to make certain repairs to docks and warehouses on the property.

In the issue pertinent to this appeal, the lower court had entered judgment against the plaintiff for more than $54,000 in damages for interior repairs to the two warehouses, although the court also determined that the repairs that were not performed did not cause " 'any damage to or diminution in value of the Subject Property.' " Ceres Terminals, Inc., 259 Ill. App. 3d at 849. The plaintiff contended that the court used the wrong measure of damages in determining its liability (Ceres Terminals, Inc., 259 Ill. App. 3d at 840), and that the defendants were not entitled to such damages because the repairs were never made and there was no diminution of the property's fair market value (Ceres Terminals, Inc., 259 Ill. App. 3d at 860). The assessment of damages was upheld as to the metal warehouse, which the reviewing court noted was still functional, in use, and "capable" of being repaired. Ceres Terminals, Inc., 259 Ill. App. 3d at 862. However, the award of damages for the wooden warehouse was overturned. Ceres Terminals, Inc., 259 Ill. App. 3d at 862.

Contrary to Willis's contention, however, the basis for the decision was not the fact that the repairs were never made and the warehouse was torn down. Rather, the court had discussed the aim of awards of damages as the restoration of the party to the equivalent of his pre-injury position and it had noted that repair costs, which are a " 'convenient way to quantify the damage a

-37-

lessor has suffered,' " is a measure that should not be applied when it is not related to the damage suffered by the lessor. Ceres Terminals, Inc., 259 Ill. App. 3d at 860. The court reasoned that allowing recovery for the wooden warehouse would require "some indication of an injury in the form of a diminution in the fair market value of the property," but noted that the lower court had "expressly found that the damages to the wooden warehouse did not result in any diminution of the property's fair market value." Ceres Terminals, Inc., 259 Ill. App. 3d at 862-63. The court noted that the latter finding, of no diminution of the fair market value, was "express and unequivocal," and was supported by evidence (which showed that the wooden warehouse was uninhabitable during the period of the stay and testimony that it "should probably be destroyed rather than repaired"), and held that it controlled. Ceres Terminals, Inc., 259 Ill. App. 3d at 863. Thus, although the court noted that the defendants did not make the repairs in question, it based its conclusion on the lower court's finding of no diminution of fair market value.

Accordingly, we disagree with Willis that the holding in Ceres Terminals, Inc. is applicable to the instant case. Clearly, the real property involved here is not commercial. To the contrary, the subject realty was held for personal use as Witt's residence for just under 80 years, nearly Witt's entire life. Thus, the lessor-lessee issues involved in Ceres Terminals, Inc. have no application in the scenario presented here. Having determined that Ceres Terminals, Inc. does not apply to the instant case and the result reached there would not control here, we need not decide, as Willis implies, whether the circuit court was correct in its assessment that the Ceres Terminals, Inc. was wrongly decided. Because the factual scenario there is entirely distinguishable, we reject Willis's urging that the diminution of value standard, underlying the court's reasoning in Ceres

Terminals, Inc., be applied here too because Witt's house was ultimately torn down after it was sold. Rather, we believe the court here correctly recognized that the subsequent sale of Witt's house did not change the fact that, at the time the injury was inflicted, the damage to the house was repairable.

We also reject Willis's reliance on the purported "Arras framework," which Willis insists would support the application of the diminution of value standard of damages. That "framework," the adoption of an approach distinguishing between permanent and nonpermanent injuries, would not require that the diminution of value standard be applied here. Like the damage to the well in Arras, which was not deemed permanent, but, instead, abatable, the damage to Witt's house was not permanent: it was capable of being repaired. Rather, the court in Myers aptly recognized the situation concerning the proper measure of damage to be applied to property held for personal use, particularly that used for a family residence. Where the harm could have been corrected with a reasonable expenditure (even if the expenditure would have exceeded the amount of diminution in value of the property), "the full repair cost will come much closer to restoring what was actually lost." Myers, 83 Ill. App. 3d at 7. In fact, as noted earlier, the scenario envisioned by the Myers court occurred here when Witt was forced to sell her home. See Myers, 83 Ill. App. 3d at 7. Although Witt was forced to spend her final years without the use and enjoyment of her lifelong home, to conclude that diminution of value was an adequate measure of damages here would be, essentially, to grant Willis "a private right of eminent domain." Myers, 83 Ill. App. 3d at 7. Such measure of damages is, as the Myers court stated, "woefully inadequate" to protect plaintiffs' legitimate interest; thus, the proper measure of

1-06-3564, 1-06-3616 & 1-06-3619 (cons.)

damages in the instant case is the cost of repairs. See Myers, 83 Ill. App. 3d at 7. Therefore, the

circuit court properly ruled that the measure of repairs applicable in the instant case is that

measure set forth in IPI Civil (2005) No. 30.17, that is, the standard of cost of repairs.

Affirmed; certified questions answered.

GALLAGHER and O'MARA FROSSARD, JJ., concur.