(Nos. 57087, 57088, 57089 cons.—

BEATRICE FROUD, Indiv. and as Special Adm'r, Appellee, v. THE CELOTEX CORPORATION *et al.*, Appellants.—RITA WILLIAMSON, Indiv. and as Adm'r, Appellee, v. THE CELOTEX CORPORATION *et al.*, Appellants.—SHIRLEY FRIDAY, Indiv. and as Special Adm'r, Appellee, v. THE CELOTEX CORPORATION *et al.*, Appellants.

*Opinion filed October 25, 1983.*

Michael P. Connelly, P.C., of Chicago, (Michael P. Connelly, of counsel), for appellant Celotex Corporation.

Schiff, Hardin & Waite, of Chicago (Roger Pascal, Robert H. Riley, and Diana C. White, of counsel), for appellant Owens-Illinois, Inc.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Thomas M. Crisham, and Fredrick S. Mueller, of counsel), for appellant Owens-Corning Fiberglas Corporation.

Katten, Muchin, Zavis, Pearl & Galler, of Chicago

(James C. Murray and Bonita L. Stone, of counsel), for appellant Gaf Corporation.

Jacobs, Williams & Montgomery, Ltd., and O'Brien, Redding & Hyde, of Chicago (Barry L. Kroll, Lloyd E. Williams, Donald J. O'Brien, James A. Dower, Michael J. Rathsack, of counsel), for appellant Standard Asbestos, Inc.

Epton, Mullin, Segal & Druth, Ltd., of Chicago (Edward J. McCambridge, of counsel), for appellant H. K. Porter Co.

Sweeny & Riman, Ltd., of Chicago (Harry G. Sachrison, of counsel), for appellant Keene Corporation.

French, Rogers, Kezelis & Kominiarek, P.C., of Chicago (Richard G. French, Gilbert J. Rogers, and Annie Laurie Coogan, of counsel), for appellant Armstrong World Industries.

Chadwell & Kayser, Ltd., of Chicago (David J. Gibbons, of counsel), for appellant Raymark, Inc.

Baker, & McKenzie, of Chicago (Daniel J. Cheely, of counsel), for appellants Combustion Engineering, Inc. and Fibreboard Corporation.

Schoen & Smith, of Chicago (David M. Smith, of counsel), for appellant Pittsburg Corning Corporation.

Thomas J. Keevers, of Chicago (Susan G. Castagnoli, of counsel), for appellant Eagle-Picher Industries, Inc.

Kralovec, Marquard, Doyle & Gibbons, Chtd., of Chicago (Henry J. Marquard and Nancy Jo Arnold, of counsel), for appellant The Flintkote Company.

John B. Grogan, Ltd., of Chicago (Thomas J. Kane, John B. Grogan, and Susan Gunty, of counsel), for appellant Grant Wilson, Inc.

Haskell & Perrin, of Chicago (Willis J. Tribler and Philip A. Jackman, of counsel), for appellant A & M Insulation Co.

Tenney & Bentley, of Chicago (Michael J. Smith and Karen S. Quant, of counsel), for appellant Aarco Products Corporation.

Judge, Drew, Cipolla & Kurnick, of Park Ridge (James S. Stephenson, of counsel), for appellant Nicolet Industries, Inc.

Wildman, Harrold, Allen & Dixon, of Chicago (James P. Dorr and Elsie E. Singer, of counsel), for appellant Combustion Engineering, Inc.

Rooks, Pitts, Fullagar & Poust, of Chicago (Daniel P. Socha, Michael D. Freeborn, and David H. Kistenbroker, of counsel), for appellant Johns-Manville Sales Corporation.

Hubbard, Hubbard, O'Brien & Hall, of Chicago (Rory D. Cassidy, of counsel), for appellant Mauritzon, Inc.

Kiesler & Berman, of Chicago (Thomas B. Underwood, of counsel), for appellant Ryder Cement.

Phelan, Pope & John, of Chicago (Peter C. John and Barbara K. Halpern, of counsel), for appellant Raybestos-Manhattan, Inc.

McKenna, Storer, Rowe, White & Farrug, of Chicago (John F. White, Robert S. Soderstrom, and James P. DeNardo, of counsel), for appellant UNARCO Industries, Inc.

Burke & Burke, Ltd., of Chicago (John M. Burke, of counsel), for appellees.

George F. Archer, of Chicago, for *amicus curiae* Aviation Safety Institute.

William J. Harte, Ltd., of Chicago (William J. Harte, of counsel), for *amicus curiae* Illinois Trial Lawyers Association.

Gus Svolos, of Chicago, for *amicus curiae* Atchison, Topeka & Santa Fe Railway Co.

James R. Gannon, of Lewis, Overbeck & Furman, of Chicago, for *amici curiae* Baltimore & Ohio Chicago Terminal Railroad Co. and Chesapeake & Ohio Railway Co.

Kenneth J. Wysoglad, of Chicago, for *amicus curiae* Burlington Northern Railroad Co.

Edward M. O'Donnell, of Chicago, for *amicus curiae* Chicago, Milwaukee, St. Paul & Pacific Railroad Co.

James P. Daley, of Chicago, for *amicus curiae* Chicago & North Western Transportation Co.

William D. Serritella, of Ross, Hardies, O'Keefe, Babcock & Parsons, of Chicago, for *amicus curiae* Consolidated Rail Corporation.

George W. Gessler, of Chicago, for *amicus curiae* Elgin, Joliet & Eastern Railway Co.

Thomas J. Healey, of Chicago, for *amicus curiae* Illinois Central Gulf Railroad.

Scott Skaletsky, of Chicago, for *amicus curiae* Missouri Pacific Railroad Co.

JUSTICE SIMON delivered the opinion of the court:

Here we must decide whether a claim for punitive damages in a common law action for recovery on account of an injury to a person abates at the death of the injured person or survives the death by reason of the Survival Act (Ill. Rev. Stat. 1981, ch. 110½, par. 27—6).

In each of these consolidated actions, which were

filed in the circuit court of Cook County, the plaintiffs alleged that their decedents were victims of asbestosis after prolonged exposure to insulation products containing asbestos which were manufactured, distributed or sold by the 20 defendants. The plaintiffs further alleged that the defendants sold and distributed asbestos products with knowledge that they were dangerous and also concealed the dangers from the public. Two of the plaintiffs filed their actions after their illnesses were diagnosed and died subsequently as a result of peritoneal mesothelioma. The third died from bronchogenic carcinoma before filing any lawsuit, and his administrator brought an action on his behalf. Each complaint sets forth a count alleging common law wilful and wanton conduct, and, based upon these allegations, each plaintiff seeks recovery of a punitive award under the Survival Act. The circuit court dismissed all of the claims for punitive damages, reasoning that the Survival Act does not authorize the survival of common law claims for these damages. Its dismissal was accompanied by a finding under Rule 304(a) (87 Ill. 2d R. 304(a)) that there was no just reason to delay appeal of its order, whereupon the plaintiffs appealed the punitive damages issue to the appellate court. That court reversed the dismissal of the claims (107 Ill. App. 3d 654), and we granted leave to appeal.

The Survival Act provides in relevant part:

> "In addition to the actions which survive by common law, the following also survive: *** actions to recover damages for an injury to the person (except slander and libel) ***." Ill. Rev. Stat. 1981, ch. 110½, par. 27—6.

The defendants contend that the precise issue presented here was decided by this court in *Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31. The plaintiffs argue that *Mattyasovszky* was either implicitly overruled or distinguished by *National Bank v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 160. The plaintiffs also urge that if *Mattyasovszky* holds that punitive damages claims do not sur-

vive in the absence of a specific statute of a type which was available to apply in *National Bank* which authorized such recovery, *Mattyasovszky* should be overruled.

We regard *Mattyasovszky* and *National Bank* as reconcilable. In the former this court held that a claim for punitive damages in a common law action did not survive. The court said:

> "This statute [the Illinois Survival Act] has never been thought to authorize the award of punitive damages. The plaintiff's contention that it should now be construed to do so rests largely upon the recent decision of this court in *Murphy v. Martin Oil Co.* (1974), 56 Ill. 2d 423, which authorized recovery for a decedent's pain and suffering during the interval between injury and death, as well as for pecuniary loss. But nothing in that opinion was intended to or did authorize the recovery of punitive damages. On the other hand, the opinion both intrinsically and through its reliance upon *McDaniel v. Bullard* (1966), 34 Ill. 2d 487, *emphasized the compensatory nature of damages authorized under the Survival Act.* We find nothing in the *Murphy* case which suggests a change in *the law of this State* which for more than a hundred years *has limited the recovery under the Survival Act to compensatory damages.*
>
> *** The actions which survive under our statute are 'actions to recover damages for an injury to the person,' and as we have pointed out, the very decisions that have recently expanded the right to recover under it have emphasized the compensatory nature of the recovery it authorizes." (Emphasis added.) *Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, 33-34.

The court in *Mattyasovszky* then considered whether Illinois courts would recognize a common law action for injuries to a person who had died which included punitive damages. It concluded that, no matter how outrageous the defendant's conduct was, such an action was recognized only where "strong equitable considerations" existed such as the unavailability of any other remedy. (61 Ill. 2d 31, 37.) Because the death involved in that case gave rise to

two statutory actions, one permitting recovery of damages by the decedent's estate under the Survival Act and the other recovery by the next of kin under the Wrongful Death Act, this court refused to impose, in addition, a common law exaction against the defendant, under the label of exemplary damages, which "becomes a windfall for the plaintiff" (61 Ill. 2d 31, 36).

In contrast, the recovery of punitive damages in *National Bank* was rationalized by a provision of the Public Utilities Act under which the action including the claim for punitive damages was instituted. The decedent was killed at an obstructed railroad crossing when the automobile in which he was a passenger was struck by a train. The Public Utilities Act prohibited obstructions at railroad crossings and also provided that a railroad would be liable to persons affected thereby "for all loss, damages or injury caused *** or resulting" from any act or omission prohibited by the statute. (Ill. Rev. Stat. 1977, ch. 111⅔, par. 77.) It further provided that "if *** the act or omission was wilful, the court may in addition to the actual damages, award damages for the sake of example and by the way of punishment." (Ill. Rev. Stat. 1977, ch. 111⅔, par. 77.) The plaintiffs emphasize that the Survival Act does not distinguish between actions based on the common law and those based on a statute. In *National Bank*, however, the court, while acknowledging that under *Mattyasovszky* common law punitive claims abated on the death of the injured party, drew a distinction between punitive awards based on the common law and those based on a statute. Relying on that distinction, this court followed a different path in *National Ba..c*, where the punitive claim was part of a comprehensive regulatory scheme for public utilities. The court emphasized this difference by noting in *National Bank*:

> "Here, in contrast to *Mattyasovszky*, punitive recovery was sought, not under the common law, but directly under the Public Utilities Act, which expressly provides

that 'if the court shall find that the act or omission was wilful, the court may in addition to the actual damages, award damages for the sake of example and by way of punishment.' (Ill. Rev. Stat. 1969, ch. 111⅔, par. 77.) The Survival Act itself neither authorizes nor prohibits punitive damages. It is merely the vehicle by which the cause of action, created by the Public Utilities Act, survives the death of the injured person when the action would otherwise have abated at common law. Unquestionably, the Public Utilities Act intends to punish an offender and discourage similar offenses by allowing punitive damages to be awarded whenever an injury results from a defendant's wrongful and wilful statutory violation. *It would pervert the Act's intention if reprehensible conduct, so severe in consequence that resultant injury, culminating in death, was to be insulated from punitive liability under the very act designed to vigilantly promote safety by public utilities.* *** Under the Act, defendant's punitive liability accrued from the moment decedent sustained personal injury and, upon decedent's death, his right to recovery passed unabated to his estate.'' (Emphasis added.) *National Bank v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 160, 173-74.

The keynote of the plaintiffs' position is that if actions for punitive damages expressly provided for by statute survive as in *National Bank*, this result must be by reason of the Survival Act. Thus, they argue that if the Survival Act permits punitive claims of that type to survive, there is no logical reason to hold, as *Mattyasovszky* did, that similar common law claims do not also survive. The *National Bank* holding does not, however, depend solely upon the Survival Act for the conclusion it reaches. Instead, it presumes that where the legislature specifically provides for recovery of exemplary damages as part of a comprehensive regulatory scheme such as that provided by the Public Utilities Act, the intention of the legislature was that the claim for a punitive award should be litigated regardless of whether the injured person continues to live. That claim is an integral component of the regulatory scheme and of the

remedy which is available under it: it can no more be diminished by common law doctrines such as abatement than a statutory limitations period can be eroded by such equitable doctrines as tolling. (See, *e.g., Demchuk v. Duplancich* (1982), 92 Ill. 2d 1, 6-7; *Hartray v. Chicago Rys. Co.* (1919), 290 Ill. 85, 86-87.) The Public Utilities Act is a regulatory statute, and the punitive damages provision is part and parcel of the Act. Were punitive damages not recoverable in every instance where a public utility was guilty of a wilful act or omission, the legislature might not have considered the Act a sufficient deterrent to adopt it. Thus, the theory of *National Bank* is that the punitive claim survives because of the Public Utilities Act itself.

Although not expounded upon in the *National Bank* opinion, the idea that the legislature intended that to carry out the regulatory plan for public utilities the claim for punitive damages should not abate upon the death of the injured person is also demonstrated by the final sentence of section 73 of the Public Utilities Act. That sentence permits "*any* person" to assert the punitive damage claim. (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 111⅔, par. 77.) As we regard that language, the words "any person" include not only the injured party but also his personal representative after his death.

Thus, in brief, the Public Utilities Act provides for survival of the actions which it authorizes, and *National Bank* does not require any different interpretation of the Survival Act than the one this court gave the statute in *Mattyasovszky*. The United States Court of Appeals for the Seventh Circuit reached the conclusion that the decisions were not inconsistent in the case involving the DC-10 crash near O'Hare airport on May 25, 1979:

> "Plaintiffs argue that the Illinois law on punitive damages is in a state of flux, citing recent cases allowing punitive damages in survival actions. *National Bank of Bloomington v. Norfolk & Western Ry. Co.*, 73 Ill. 2d 160, 23 Ill. Dec. 48, 383 N.E.2d 919 (1978); *Churchill v. Nor-*

*folk & Western Ry Co.,* 73 Ill. 2d 127, 23 Ill. Dec. 58, 383 N.E.2d 929 (1978). But in these *Norfolk* cases, damages were sought under the Public Utilities Act, which expressly provides for punitive damages. *** The Illinois Supreme Court held in the *Norfolk* cases that where a statute specifically provides for punitive damages, nothing in the Survival Act, Ill. Rev. Stat. ch. 3, § 339 (1964), now Ill. Rev. Stat. § 110½, par. 27—6 (1977), or in the *Mattyasovszky* decision operates to abate that *statutory* liability for punitive damages. Thus, the *Norfolk* cases do not vitiate the holding of the *Mattyasovszky* case." *In re Air Crash Disaster near Chicago, Illinois on May 25, 1979* (7th Cir. 1981), 644 F.2d 594, 605-06.

The plaintiffs support their argument that the Survival Act does not preclude the award of punitive damages after the death of the injured person by emphasizing the following language in *National Bank:* "The Survival Act itself neither authorizes nor prohibits punitive damages." (73 Ill. 2d 160, 174.) It is true that the Survival Act does not authorize claims for punitive damages; its purpose is only to authorize the survival of certain specified claims which in the absence of the Survival Act would abate. Similarly, the Survival Act does not prohibit the survival of any claims (except libel and slander). The common law provides such prohibition. The Survival Act affords relief in the instances specified in the Act from the common law rule of nonsurvival. However, the Survival Act cannot be regarded, as the appellate court and the plaintiffs view it, as "a neutral vehicle" (107 Ill. App. 3d 654, 658). The Survival Act shields from abatement only those claims which are specifically set forth in it; which claims abate and which survive is the result of legislative judgment to which this court is not free "to annex new provisions or substitute different ones" or provide exceptions, limitations or conditions which are different than the plain meaning of the statute. (*Belfield v. Coop* (1956), 8 Ill. 2d 293, 306-07.) Our conclusion in this case depends on the scope of the Survival Act unaided by a statutory regulatory scheme such as that con-

tained in the Public Utilities Act, and this court is not free to read into the Survival Act its own views of the type of claims which should be permitted to survive. See *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund* (1983), 95 Ill. 2d 211.

The conclusion that is ordained on the basis of the above analysis of *Mattyasovszky* and *National Bank* is clear. Because there is no statutory basis for the award of punitive damages in these cases comparable to the provisions of the Public Utilities Act referred to in *National Bank,* we must regard *Mattyasovszky* as the controlling precedent. Under *Mattyasovszky* the plaintiffs' claims cannot survive the death of the injured persons.

We are unwilling to accept the plaintiffs' invitation to overrule *Mattyasovszky* and add to the scope of the Survival Act by including within it common law claims for punitive damages based upon an injury to the person.

In urging that we overrule *Mattyasovszky* the plaintiffs ask that we consider the often repeated adage that it is cheaper to kill your victim than to leave him maimed, and the possibility that defendants faced with punitive damage claims may attempt to delay the proceedings until the plaintiffs who advance them die. Persuasive as these arguments sound, we believe they are better addressed to the General Assembly than to this court in view of the legislature's earlier expression of its views on the matter in the Survival Act and this court's interpretation of that act in *Mattyasovszky.*

Between the appellate court decision in that case (21 Ill. App. 3d 46) which disallowed punitive damages and this court's affirmance of the appellate court, a bill was introduced in the General Assembly to amend the Survival Act by expressly providing for the survival of "damages, actual and punitive, for an injury to the person." The bill was defeated by the committee to which it was referred and never went beyond that committee. (2 Final Legislative

Synopsis and Digest of the 1975 Session of the Seventy-Ninth General Assembly, State of Illinois 1188.) Prior to this court's decision in *Mattyasovszky* the Survival Act was reenacted several times without any modification of the provisions on which the appellate court and this court rested their conclusions that punitive damages were not recoverable. (1939 Ill. Laws 79; 1951 Ill. Laws 1680; Ill. Rev. Stat. 1975, ch. 3, par. 339.) Thus, neither the appellate court's nor this court's decision in *Mattyasovszky* has been altered by any amendment of the Survival Act even though a legislative committee considered an amendment which would have allowed punitive damages. Under these circumstances, the construction placed upon the Survival Act by *Mattyasovszky* should be regarded as having been incorporated in the Act. (See *Williams v. Crickman* (1980), 81 Ill. 2d 105, 110-11.) A "change in that construction by this court would amount to amending the statute," and this court has acknowledged that "[t]he power to accomplish this does not lie in the courts." *Union Electric Co. v. Illinois Commerce Com.* (1979), 77 Ill. 2d 364, 381.

While we recently observed that *stare decisis* "must not be allowed to obscure the changing needs of society or to veil the injustice resulting from a doctrine in need of re-evaluation" (*Alvis v. Ribar* (1981), 85 Ill. 2d 1, 24), we must also keep in mind that here we are concerned with a prior judicial construction of a statute as distinguished from a judicial pronouncement of a common law doctrine as in *Alvis* and in *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11. Considerations of *stare decisis* weigh more heavily in the area of statutory construction than in the latter area because such a departure, as explained in the *Union Electric* opinion quoted above, amounts to an amendment of the statute itself rather than simply a change in the thinking of the judiciary with respect to common law concepts which are properly under its control. *Union Electric Co. v. Illinois Commerce*

*Com.* (1979), 77 Ill. 2d 364, 380-81; see, *e.g., Illinois Brick Co. v. Illinois* (1977), 431 U.S. 720, 736-37, 52 L. Ed. 2d 707, 719, 97 S. Ct. 2061, 2069-70; *Boys Markets, Inc. v. Retail Clerks Union, Local 770* (1970), 398 U.S. 235, 257-58, 26 L. Ed. 2d 199, 214-15, 90 S. Ct. 1583, 1595-96 (Black, J., dissenting); *General Dynamics Corp., Electric Boat Division, v. Benefits Review Board* (2d Cir. 1977), 565 F.2d 208, 212; *Williams v. Ray* (1978), 146 Ga. App. 333, 334, 246 S.E.2d 387, 388-89; *James v. Vernon Calhoun Packing Co.* (Tex. 1973), 498 S.W.2d 160, 162-63; E. Levi, An Introduction to Legal Reasoning 27-57, and especially at 32-33; 2A A. Sutherland, Statutory Construction sec. 49.05 (4th ed. 1973); Horack, *Congressional Silence: A Tool of Judicial Supremacy*, 25 Tex. L. Rev. 247, 250-53 (1947).

There is still another reason why we should not tamper with *Mattyasovszky* in resolving this case. Courts and litigants have relied on *Mattyasovszky* as setting forth the law of Illinois in cases in which representatives of one or more decedents sought punitive damages. (*Hamrick v. Lewis* (N.D. Ill. 1981), 515 F. Supp. 983, 988 (action brought under the Survival Act); *In re Johns-Manville Asbestos Cases* (N.D. Ill. 1981), 511 F. Supp. 1235, 1240 (Survival Act and Wrongful Death Act); see also *In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979* (7th Cir. 1981), 644 F.2d 594, 605-06 (actions brought only under the Wrongful Death Act).) In the latter two cases the claims of many plaintiffs were stricken in reliance on the viability of *Mattyasovszky.* For this court to overrule *Mattyasovszky* now, in the absence of any indication that the legislature has determined that our interpretation of the Survival Act in *Mattyasovszky* was mistaken or that the Act as so interpreted should be changed, would be a disservice to the plaintiffs in those cases in addition to detracting from the degree of reliance the public can place on the meaning of statutes which this court has construed.

Accordingly, the judgment of the appellate court is reversed, the judgment of the circuit court is affirmed, and the cause is remanded to the circuit court for further proceedings not inconsistent with the views expressed herein.

*Appellate court reversed;*
*circuit court affirmed;*
*cause remanded.*