No. 2-09-0625     Filed: 4-7-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THOMAS VINCENT, as Legal Representative | ) | Appeal from the Circuit Court of |
| of the Estate of Marjorie Vincent, Deceased, | ) | Winnebago County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 07--L--448 |
| | ) | |
| ALDEN-PARK STRATHMOOR, INC., | ) | Honorable |
| | ) | J. Edward Prochaska, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the opinion of the court:

## I. BACKGROUND

In a three-count action brought pursuant to the Survival Act (755 ILCS 5/27--6 (West 2006)), plaintiff, Thomas Vincent, as legal representative of the estate of Marjorie Vincent, sued defendant, Alden-Park Strathmoor, Inc., for personal injuries that Marjorie sustained prior to her death and while in defendant's care. In count I, plaintiff alleged that defendant's negligent actions violated the Nursing Home Care Act (Act) (210 ILCS 45/1--101 et seq. (West 2006)); plaintiff sought $50,000 in compensatory damages, plus attorney fees and costs pursuant to sections 3--601 and 3--602 of the Act (210 ILCS 45/3--601, 3--602 (West 2006)). In Count II, plaintiff alleged that defendant's actions violated the Wrongful Death Act (740 ILCS 180/1 et seq. (West 2006)); plaintiff sought $50,000 in compensatory damages. In count III, entitled "Nursing Home Care Act--Survival Action--Willful and Wanton," plaintiff alleged that defendant's willful and wanton conduct violated the Act and

rendered defendant liable for actual damages, costs, and attorney fees pursuant to sections 3--601 and 3--602 of the Act. In addition, in count III plaintiff reserved the right, pursuant to section 2--604.1 of the Code of Civil Procedure (735 ILCS 5/2--604.1 (West 2006)), to seek punitive damages for defendant's alleged willful and wanton conduct.

Defendant moved to strike plaintiff's reservation of the right to request punitive damages on the basis that the punitive damages claim did not survive Marjorie's death. On March 31, 2009, the trial court granted defendant's motion. On June 2, 2009, the court granted plaintiff's motion for leave to file an interlocutory appeal pursuant to Supreme Court Rule 308(a) (155 Ill. 2d R. 308(a)). We granted the Rule 308 petition,[1] and we are asked to answer the following certified question:

> "Whether common[-]law punitive damages are available in an action brought by the personal representative of the estate of a deceased nursing home resident based on the Survival Act for willful and wanton violations of the Nursing Home Care Act which caused injuries that ultimately claimed her life."

We answer the certified question in the negative. Specifically, we conclude that common-law punitive damages are <u>not</u> available in a survival action brought under the Act. There is no statutory basis for punitive damages, and no equitable considerations warrant such a remedy.

## II. ANALYSIS

The Survival Act (a provision within the Probate Act of 1975 (755 ILCS 5/1--1 <u>et</u> <u>seq.</u> (West 2006)) does not create a statutory cause of action; rather, it permits an estate representative to

---

[1]In addition, on October 6, 2009, we granted the Illinois Trial Lawyers Association's motion for leave to file, pursuant to Supreme Court Rule 345(a) (210 Ill. 2d R. 345(a)), an <u>amicus</u> <u>curiae</u> brief in support of plaintiff's position.

maintain those statutory or common-law actions that had already accrued to the decedent before his or her death and that would otherwise have abated under the common law at the time of death. National Bank v. Norfolk & Western Ry. Co., 73 Ill. 2d 160, 172 (1978). The Survival Act neither authorizes nor prohibits punitive damages; however, it is not "a neutral vehicle." Froud v. Celotex Corp., 98 Ill. 2d 324, 334 (1983). Only those claims that are specifically set forth in the Survival Act are shielded from abatement: "which claims abate and which survive is the result of legislative judgment." Froud, 98 Ill. 2d at 334. The Survival Act provides, in relevant part, that "actions to recover damages for an injury to the person" survive a decedent's death. 755 ILCS 5/27--6 (West 2006).

Here, the parties do not dispute that an estate administrator may, via the Survival Act, bring a claim pursuant to the Act for personal injuries incurred by a decedent prior to his or her death. See Myers v. Heritage Enterprises, Inc., 332 Ill. App. 3d 514, 517 (2002). However, plaintiff asserts that "the ultimate issue of whether common-law punitive damages in a Nursing Home Care Act case survive the death of the decedent has not been decided by Illinois courts." (Emphasis added.) We review this issue of law de novo. Marston v. Walgreen Co., 389 Ill. App. 3d 337, 344 (2009).

## A. Background Case Law

Before addressing the certified question, it is helpful to review our supreme court's treatment of the availability of punitive damages in a survival action. In considering the availability of punitive damages in a claim brought by an estate administrator via the Survival Act, the supreme court draws a distinction between punitive damages awards based in the common law and those provided by statute. Specifically, in Mattyasovszky v. West Towns Bus Co., 61 Ill. 2d 31 (1975), the supreme court rejected an argument that common-law punitive damages might be recoverable under the

Survival Act, stating that "for more than a hundred years," this state has limited recovery under the Survival Act to compensatory damages. Mattyasovszky, 61 Ill. 2d at 33. The court noted that survival actions to recover damages for personal injury are of a compensatory nature. Mattyasovszky, 61 Ill. 2d at 33-34. Thus, the court held that a common-law action for punitive damages does not survive the decedent's death. Mattyasovszky, 61 Ill. 2d at 33-34. Next, the court declined to recognize a common-law wrongful death action that would allow for the recovery of punitive damages, on the basis that, in the case before it, there were no "strong equitable considerations," such as the unavailability of any other remedy, warranting recognition of such an action. Mattyasovszky, 61 Ill. 2d at 37.

Subsequently, the court held that an action for punitive damages under the Public Utilities Act (220 ILCS 5/1--101 et seq. (West 2006)) did survive the decedent's death. In National Bank, the court found critical to survival that the Public Utilities Act contained an explicit provision that, for willful violations thereof, "the court may in addition to the actual damages, award damages for the sake of example and by way of punishment." National Bank, 73 Ill. 2d at 173-74. In light of this statutory language, the court concluded that the punitive damages claim survived because:

"Unquestionably, the Public Utilities Act intends to punish an offender and discourage similar offenses by allowing punitive damages to be awarded whenever an injury results from a defendant's wrongful and wilful statutory violation. It would pervert the Act's intention if reprehensible conduct, so severe in consequence that resultant injury, culminating in death, was to be insulated from punitive liability under the very act designed to vigilantly promote safety by public utilities." National Bank, 73 Ill. 2d at 173-74.

Further, the court noted that the Mattyasovszky decision did not abate a defendant's "statutory liability for punitive damages upon the death of the injured person," nor did Mattyasovszky base its denial of common-law punitive damages "on the broad proposition that punitive damages are unrecoverable when injury results in death." (Emphasis in original.) National Bank, 73 Ill. 2d at 173. In Froud, the court considered whether National Bank had overruled Mattyasovszky. The court answered that question in the negative, rejecting arguments that National Bank and Mattyasovszky were irreconcilable and declining an invitation to overrule Mattyasovszky. Froud, 98 Ill. 2d at 335. The court explained that the decision in National Bank was not based solely on the Survival Act; rather, National Bank presumed that, where the "legislature specifically provides for recovery of exemplary damages as part of a comprehensive regulatory scheme" and where the punitive damages provision is "part and parcel" of the act at issue, the legislature's intention was for the punitive damages claim to "be litigated regardless of whether the injured person continues to live." Froud, 98 Ill. 2d at 332-33.

These principles were most recently affirmed in Ballweg v. City of Springfield, 114 Ill. 2d 107, 117 (1986), where the court declined an invitation to overrule Froud and Mattyasovszky and re-affirmed that "Illinois law is clear that punitive damages are not recoverable under the Survival Act." Ballweg, 114 Ill. 2d at 117.

Therefore, the foregoing authority establishes that absent specific statutory authority or, as some cases have stated based upon Mattyasovszky, "very strong equitable considerations" (see, e.g., Marston, 389 Ill. App. 3d at 344), punitive damages are not permitted in a Survival Act action for personal injury. Thus, we reach the issues in this appeal. Plaintiff and amicus counsel argue that we should answer the certified question in the affirmative and conclude that common-law punitive

damages claims for violations of the Act survive because: (1) the Act "authorizes" punitive damages; and/or (2) strong equitable considerations favor survival. For the following reasons, we disagree.

B. No Statutory Basis for Punitive Damages Under Nursing Home Care Act

Plaintiff argues first that the Act statutorily "authorizes" punitive damages and that, thus, the common-law punitive damages claim survived Marjorie's death. Plaintiff concedes that nothing in the Act refers to punitive damages or resembles the explicit statutory provision for punitive damages that was considered by the court in National Bank. Indeed, the Act's remedy provision, section 3--602, allows for "actual damages and costs and attorney's fees to a facility resident whose rights *** are violated." 210 ILCS 45/3--602 (West 2006). Plaintiff acknowledges this, but identifies other provisions in the Act that allow a plaintiff to pursue "under the Act" remedies other than those expressed by section 3--602. Specifically, plaintiff cites section 3--603 of the Act, which states that a resident may "maintain an action under this Act for any other type of relief, including injunctive and declaratory relief, permitted by law." 210 ILCS 45/3--603 (West 2006). Plaintiff also notes that the Act allows recovery for intentional acts--the type that generally give rise to punitive damages (210 ILCS 45/3--601 (West 2006))--and that the Act's section applicable to class actions provides that the remedies in sections 3--601 through 3--607 "are in addition to and cumulative with any other legal remedies available to a resident" (210 ILCS 45/3--604 (West 2006)). Plaintiff contends that, in light of the following supreme court decisions and the Act's legislative history, these provisions, particularly section 3--603, reflect a statutory basis for punitive damages.

We disagree. Plaintiff essentially seeks to craft a statutory basis for punitive damages by threading together provisions of the Act, its legislative history, and case law. While we appreciate plaintiff's argument, it is simply mistaken. As illustrated below: (1) the cases upon which plaintiff

relies do not reflect that punitive damages are provided for by the Act; (2) the Act itself is devoid of any provision for punitive damages; and (3) the legislative history clearly and unequivocally reflects that the General Assembly did not intend that punitive damages be recoverable under the Act.

### 1. Plaintiff's Cases

First, plaintiff's reliance on Harris v. Manor Healthcare Corp., 111 Ill. 2d 350 (1986), Dardeen v. Heartland Manor, Inc., 186 Ill. 2d 291, 300 (1999), and Eads v. Heritage Enterprises, Inc., 204 Ill. 2d 92, 105 (2003), for the proposition that a plaintiff in a survival action may recover common-law punitive damages under the Act is misplaced. In Harris, a nursing home resident (not an estate administrator, thus, not in a Survival Act claim) sued a nursing home for injuries under the Act. The plaintiff sought treble and compensatory damages under section 3--602.[2] In addition, the plaintiff sought common-law punitive damages pursuant to sections 3--603 and 3--604, which allow a plaintiff to pursue other actions permitted by law. In part, the supreme court considered whether the Act violated due process by providing for treble damages, which are punitive, while also allowing a plaintiff to pursue common-law punitive damages. Harris, 111 Ill. 2d at 357. The court held that the recovery of both treble damages under the Act and common-law punitive damages would constitute double recovery for a single injury and that, therefore, a plaintiff "can recover either treble damages under the Act or common-law punitive damages, but not both." Harris, 111 Ill. 2d at 365. The court did not require that a plaintiff elect to pursue only one of the remedies, but it noted

---

[2]Prior to 1995, section 3--602 of the Act provided: "the licensee shall pay 3 times the actual damages, or $500, whichever is greater, and costs and attorney's fees to a facility resident whose rights, as specified in Part 1 of Article II of this Act, are violated." 210 ILCS 45/3--602 (West 1994).

that section 3--603's provision that a resident may maintain an action "for any other type of relief \*\*\* permitted by law" did not authorize recovery of both treble damages and common-law punitive damages. Harris, 111 Ill. 2d at 363, 365. Rather, section 3--603 merely made available to plaintiffs remedies or actions for violations of the Act that are "different or distinct" from the damages remedy already provided for in section 3--602. Harris, 111 Ill. 2d at 363. Finally, the court noted that section 3--604's provision that the Act's remedies are "cumulative" to any other available legal remedy was "just another way of stating that the remedy is not exclusive." Harris, 111 Ill. 2d at 365.

Thereafter, in Dardeen, an estate administrator who brought a survival action appealed the dismissal of her request under the Act for treble damages. The court considered as a certified question whether a 1995 amendment to the Act that repealed the treble damages provision could be applied retroactively. The court concluded that the amendment did not interfere with a vested right and that, therefore, it retroactively applied to the plaintiff's claim such that treble damages were unavailable. Dardeen, 186 Ill. 2d at 298-99. In doing so, the court noted that the Act's damages provision, as amended, limited recovery for violations of the Act to actual damages, costs, and attorney fees. Dardeen, 186 Ill. 2d at 292; see 210 ILCS 45/3--602 (West 1996). Moreover, the court rejected the plaintiff's argument that the amendment raised a plaintiff's burden of proof for establishing entitlement to punitive damages (from negligence to willful conduct), noting:

"The repeal of one of the remedies available to plaintiff under the Act does not deprive plaintiff of her cause of action. \*\*\* The amendment to section 3--602 pertains only to the remedies available to plaintiff once plaintiff has proved her cause of action. Under the amended version of the statute, plaintiff may recover actual damages and attorney fees upon proof of defendant's negligent violations of the Act, and may additionally recover common-

law punitive damages upon proof of willful and wanton misconduct on the part of defendant." (Emphasis added.) Dardeen, 186 Ill. 2d at 300.

In Eads, 204 Ill. 2d at 94, the court considered the "sole issue" of whether a plaintiff asserting a cause of action under the Act must attach to the complaint a certificate of merit as required by the Healing Arts Malpractice Act (735 ILCS 5/2--622 (West 2000)). The court answered this question in the negative. Eads, 204 Ill. 2d at 109. In doing so, the court referenced the opposing nature of the two laws at issue, noting that the Healing Arts Malpractice Act expressly banned recovery of punitive damages, whereas, in contrast, "the Nursing Home Care Act allows plaintiffs to recover common-law punitive damages upon proof of willful and wanton misconduct on the part of defendants." Eads, 204 Ill. 2d at 103-04, citing Dardeen, 186 Ill. 2d at 300.

We disagree with plaintiff that the aforementioned cases reflect that the Act provides for recovery of common-law punitive damages in a survival action. Each of those cases considered a narrow issue, and none considered the survivability of a punitive damages claim. Plaintiff emphasizes that Harris noted that section 3--603 allows remedies "under [the] Act" separate and distinct from those provided by section 3--602. Harris, 111 Ill. 2d at 362. It does; but, it also specifies that those remedies must be available at law, and common-law punitive damages are not available to a decedent's estate. Further, we do not read the court's statement in Dardeen--that a plaintiff may recover actual damages and attorney fees upon proof of a defendant's negligent violations of the Act "and may additionally recover common-law punitive damages upon proof of willful and wanton misconduct on the part of the defendant"--as holding that the Act provides a statutory right to recover punitive damages. Dardeen, 186 Ill. 2d at 300. Rather, the statement merely acknowledged a plaintiff's general right to seek recovery under the Act as well as common-

law recovery for willful and wanton conduct. Although plaintiff makes much of the fact that the Dardeen court made this comment while considering a survival action, there was no issue before the court concerning the survival of damages. The court considered as a certified question the retroactivity of an amendment and spoke of remedies only generally and in response to the plaintiff's suggestion that the amendment changed the burden of proof for establishing punitive damages. To the extent that the court's comment could be read to suggest that common-law punitive damages remain available in a survival action, it is arguably dicta because the court did not need to consider that issue to answer the question on appeal and did not deliberately rule on it. See, e.g., Exelon Corp. v. Department of Revenue, 234 Ill. 2d 266, 281-82 (2009) (language was obiter dictum when court did not need to, and did not, deliberately rule upon a point but, rather, commented as an aside). Finally, Eads involved the attachment of a certificate; in considering this very narrow issue, the court's citation to Dardeen merely distinguished the Act's provision allowing a plaintiff to pursue common-law punitive damages for proof of willful and wanton conduct from an act that contains no such provision.

We conclude that these cases reflect that the Act "authorizes" punitive damages only in the sense that it does not preclude a plaintiff from pursuing other available causes of action in addition to those that are available under the Act. As stated in Harris, the fact that the Act's remedies are cumulative to other remedies available at law means only that the Act's remedies are not exclusive-- in other words, the Act does not preempt or preclude a plaintiff from pursuing other available causes of action. Harris, 111 Ill. 2d at 365. The fact that the Act permits a plaintiff to seek remedies in addition to those it provides does not equate to the Act itself providing them. Nothing in the foregoing cases reflects that the Act contains a punitive damages provision. Rather, the case law

requires the Act to specifically provide for punitive damages. To the extent that plaintiff wishes us to read into the Act a provision that is not there, we decline to do so. In sum, we disagree with plaintiff that the foregoing cases reflect that our supreme court has held that the Act provides for punitive damages.

Accordingly, we reject plaintiff's argument that the Act's remedy provision, like the statute at issue in National Bank, reflects express statutory authority for punitive damages. The Act's remedy provision is simply nothing like that considered in National Bank. Again, National Bank considered a statute that provided that "the court may in addition to the actual damages, award damages for the sake of example and by the way of punishment." National Bank, 73 Ill. 2d at 173-74. Punitive damages remained recoverable in that survival action because they were part of the Public Utilities Act's comprehensive regulatory scheme. National Bank, 73 Ill. 2d at 173-74; see Froud, 98 Ill. 2d at 332-33. In contrast, the remedy provision here provides only for attorney fees, costs, and actual damages, and the Act permits a resident to maintain an action under it for "any other type of relief *** permitted by law." 210 ILCS 45/3--602, 3--603 (West 2006). In that sense, the Act is more akin to that considered by the court in Duncavage v. Allen, 147 Ill. App. 3d 88 (1986).

In Duncavage, the court dismissed a survival action claim for punitive damages under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 et seq. (West 2006)), stating: "[t]he circumstances here fall short of the requirements of Froud. Although section 10(a) of the Consumer Fraud Act provides that a court may award any relief which it deems proper, the Act does not explicitly authorize punitive damages." Duncavage, 147 Ill. App. 3d at 103. The court noted that its previous recognition that punitive damages were available under

the Consumer Fraud Act did not decide the issue of whether those damages could be recovered in a survival action. Duncavage, 147 Ill. App. 3d at 103; see also LaSalle National Bank v. Quality Excavation, Inc., 378 Ill. App. 3d 307, 322 (2007) (where no provision of the Adjacent Landowner Excavation Protection Act (765 ILCS 140/1 (West 2002)) expressly provided for punitive damages, court rejected the plaintiffs' arguments concerning the statute's general policy and their insistence upon "a statutory association" permitting survival of their punitive damages claims).

Similarly, in Glazewski v. Coronet Insurance Co., 108 Ill. 2d 243, 251-52 (1985), our supreme court considered a claim for damages brought under the Uniform Deceptive Trade Practices Act (Deceptive Practices Act) (815 ILCS 510/1 et seq. (West 2006)). There, the defendants argued that damages were unavailable under that statute where it provided for specific relief (i.e., injunctive relief, attorney fees, and costs) but also provided that the relief available " 'is in addition to remedies otherwise available against the same conduct under the common law or other statutes of this State.' " Glazewski, 108 Ill. 2d at 252, quoting Ill. Rev. Stat. 1983, ch. 121½, par. 313. The court questioned whether damages were therefore available under that statute, or whether the provision meant simply that the specified remedies were not exclusive and that damages were available only if a common-law or statutory action was pleaded in another proceeding. Glazewski, 108 Ill. 2d at 252. The court concluded that damages were not available under the Deceptive Practices Act but, rather, that the statute permitted a plaintiff to seek damages through a separate action. Glazewski, 108 Ill. 2d at 253.

Our conclusion here finds solid support in Glazewski and Duncavage. As in those cases, the fact that the Act here does not preclude a plaintiff from seeking common-law punitive damages does not equate to the Act providing for punitive damages. The Act does not provide for punitive damages and, therefore, punitive damages cannot be recovered in a survival action.

## 2. Legislative History

The Act's legislative history clearly supports our conclusion. We reject amicus counsel's assertion that one of Senator Fawell's comments at the 1995 General Assembly meeting in which section 3--602's treble damages provision was repealed reflects that the Act authorizes punitive damages. At that meeting, Senator Fawell was asked why the amendment proposed to delete the treble damages provision. The Senator replied:

"For legislative intent: Currently the nursing homes are the only care providers which are subject to this punitive measure. This provision has been--drastically increased insurance rates for nursing homes, and in some instances, have made insurance unavailable altogether. The result of this current law is increased costs of nursing care for all the citizens of Illinois." 89th Ill. Gen. Assem., Senate Proceedings, May 24, 1995, at 89 (statements of Senator Fawell).

Next, the Senator was asked what impact repealing the treble damages provision would have on a resident's ability to "file a lawsuit and receive equitable compensation." The Senator responded:

"The elimination of the mandatory provision in no way prevents a judge or jury from awarding punitive damages in any amount, even in excess of triple actual damages, if actions of the nursing home or any of its employees or agents are deemed to be intentional or willful and wanton, or grossly negligent. In addition, the bill retains the current and unique provision requiring that a nursing home pay the attorney's fees of a successful plaintiff ensuring nursing home residents will be able to secure legal representation." 89th Ill. Gen. Assem., Senate Proceedings, May 24, 1995, at 90 (statements of Senator Fawell).

Counsel's implication that the Senator's latter comment--that repeal would not prevent a punitive damages award--reflects a legislative intent to keep available punitive damages under the Act is, at best, a stretch. In fact, in our view, the Senator's comments reflect a belief that repeal was appropriate because it was the Act's treble damages provision that had proved detrimental to nursing homes (and by extension nursing home residents) by virtue of making them the only care providers subject to the punitive measure. Thus, although the Act would no longer provide the punitive measure, a plaintiff could still seek common-law punitive damages for willful and wanton conduct after the repeal of the treble damages provision. Nothing in the Senator's comments suggests that the Act itself continues to provide for punitive damages or that a decedent's estate may maintain an action for punitive damages via the Survival Act. Moreover, we note that the comments could also support a view that the General Assembly believed that a plaintiff could be sufficiently and equitably compensated under the Act even without the punitive damages provision.

In reality, the legislative history of the repeal of the treble damages provision clearly reflects that while the Act previously included an express provision for punitive damages, it no longer does. See, e.g., Wills v. De Kalb Area Retirement Center, 175 Ill. App. 3d 833, 841 (1988) (case decided before repeal of the Act's treble damages provision stated that its obvious purpose was to punish and deter and, therefore, it constituted a statutory basis for punitive damages that did not abate at death). "After the amendment, which took effect upon becoming law on July 21, 1995, *** recovery for violations of the Act is limited to actual damages, costs and attorney fees." White v. Sunrise Healthcare Corp., 295 Ill. App. 3d 296, 297 (1998) (also noting that it is well settled that the amendment eliminated a species of punitive damages). Moreover, on at least three occasions since the 1995 repeal of treble damages, the General Assembly has rejected attempts to amend the Act to

explicitly provide for the recovery of punitive damages, including an attempt to make them available under the Survival Act. See 91st Ill. Gen. Assem., House Bill 3391, 2000 Sess. (rejected amendment that would have provided that "[a] court may award punitive damages in an action against a facility for wilful or wanton misconduct *** or for abuse or neglect *** that results in the injury or death of a resident" and that "[a]ctions in which a court may award punitive damages include actions brought under the Wrongful Death Act and under [a provision concerning survival of actions in] the Probate Act of 1975"); 95th Ill. Gen. Assem., House Bill 3445, 2007 Sess. (rejected amendment that would have reinserted the treble damages provision); 95th Ill. Gen. Assem., House Bill 5213, 2008 Sess. (same).

Therefore, the legislative history unequivocally supports our conclusion that the Act does not provide for punitive damages and that, therefore, punitive damages cannot be recovered in a survival action.

### C. Equitable Considerations

Plaintiff and amicus counsel argue next that, even if there is no statutory basis for punitive damages, strong equitable considerations support permitting survival of a punitive damages claim in an action alleging violations of the Act. Specifically, relying on Grunloh v. Effingham Equity, Inc., 174 Ill. App. 3d 508, 519 (1988), they allege that three factors are considered when deciding whether strong equitable considerations favor survival of punitive damages claims: (1) whether the defendant's conduct offends clearly articulated public policy; (2) whether the defendant's conduct is criminal, as opposed to (or in addition to) willful and wanton; and (3) whether, absent punitive damages, the plaintiff would receive inadequate compensation for his or her injuries. Grunloh, 174 Ill. App. 3d at 519. In sum, they argue that those factors are satisfied here because: (1) there is

overwhelming evidence that it is this state's clearly articulated public policy to protect nursing home residents from willful and wanton and/or negligent actions; (2) abuse and neglect of long-term care facility residents are felonies (720 ILCS 5/12--19, 12--21 (West 2006)); and (3) without punitive damages for willful and wanton conduct, many estate representatives would be discouraged from pursuing litigation (because the death of an elderly resident often gives rise to limited compensatory damages) and the Act's deterrent purpose will thereby be compromised. In sum, they argue that the Act's purpose to protect nursing home residents from abuse and neglect is effectively subverted if the availability of common-law punitive damages is cut off upon a resident's death.

We disagree. First, we conclude that the Grunloh factors are inappropriate here. Second, we conclude that Mattyasovszky did not create an equitable-considerations exception. Third, we conclude that, even if an equitable-considerations exception exists, the exception does not apply here.

The three factors set forth in Grunloh are inappropriate here. In Grunloh, the Fourth District considered whether a punitive damages claim was assignable by a corporation and would survive the dissolution of the assignor corporation. Grunloh, 174 Ill. App. 3d at 510. Finding no authority that had considered whether punitive damages actions were assignable, the court looked to precedent addressing the survival of punitive damages claims. Grunloh, 174 Ill. App. 3d at 518-19. Citing Raisl v. Elwood Industries, Inc., 134 Ill. App. 3d 170 (1985), the court stated that the aforementioned three factors are "relevant" in considering whether strong equitable considerations favor survival of punitive damages claims. Grunloh, 174 Ill. App. 3d at 519.

We conclude that the Fourth District misread Raisl as Raisl did not purport to establish a test for survivability. Raisl concluded that punitive damages claims for retaliatory discharge survived because the Workers' Compensation Act provided a statutory basis therefor. Raisl, 134 Ill. App. 3d

at 171. Although the Raisl court also noted that punitive damages were necessary there to further public policy, punish violators, and afford a complete remedy to unlawfully discharged employees (Raisl, 134 Ill. App. 3d at 175, 177), it did so relying upon Mattyasovszky and Froud, which, it acknowledged, suggested survival only where strong equitable considerations existed "such as the unavailability of any other remedy." (Emphasis added.) Raisl, 134 Ill. App. 3d at 175, citing Mattyasovszky, 61 Ill. 2d at 37, and Froud, 98 Ill. 2d at 330.

Mattyasovszky did not create an equitable-considerations exception permitting recovery of punitive damages under the Survival Act. See, e.g., Burgess v. Clairol, Inc., 776 F. Supp. 1278, 1283 at n.6 (N.D. Ill. 1991) (analyzing Illinois law and concluding that Raisl erroneously applied the equitable-considerations discussion in Mattyasovszky--which pertained only to whether a common-law cause of action for wrongful death should be recognized--to whether a claim should survive under the survival statute). Indeed, in Mattyasovszky, the court outright rejected the argument that punitive damages were available under the Survival Act. Mattyasovszky, 61 Ill. 2d at 33. Then, when considering whether to recognize a common-law wrongful death cause of action that included punitive damages, the court concluded that the strong equitable consideration present in two out-of-state cases relied upon by the plaintiff--wherein punitive damages for wrongful death were allowed because each party would otherwise be left without any remedy--was not present in the case before it. Mattyasovszky, 61 Ill 2d at 36-37. Instead, the court held that, where the plaintiff had two distinct statutory actions and, thus, would not be without a remedy, no strong equitable considerations required it to recognize a common-law wrongful death cause of action that included punitive damages. Mattyasovszky, 61 Ill. 3d at 37.

None of the supreme court decisions following Mattyasovszky, including National Bank, Froud, and Ballweg, addressed the existence of an equitable-consideration exception applicable to the Survival Act. Rather, as in Raisl and Grunloh, that exception appears to have developed in appellate court case law. See also LaSalle National Bank, 378 Ill. App. 3d at 322 (addressing equitable considerations based, in part, upon Raisl); Penberthy v. Price, 281 Ill. App. 3d 16, 21 (1996) (addressing equitable considerations in reliance upon Grunloh). Therefore, to the extent that an equitable-considerations exception has been gleaned from Mattyasovszky, we disagree with this reading of the case. See Froud, 98 Ill. 2d at 330-31 (noting that Mattyasovszky considered equitable considerations after its Survival Act discussion and in the context of determining whether to recognize a common-law wrongful death cause of action that included punitive damages).

To the extent that such an exception exists, we agree with the First District's recent statement: "[a]s to the exception noted in Mattyasovszky for cases where strong equitable considerations militate in favor of punitive damages, it is clear that the court was contemplating instances in which a party would otherwise be left without any remedy." Marston, 389 Ill. App. 3d at 344 (vacating a punitive damages award as an unavailable remedy in a survival action). We do not agree with plaintiff and amicus counsel that, absent the availability of common-law punitive damages, a plaintiff in a survival action would be left without a remedy for a violation of the Act.

First, we disagree with their suggestion that, because recovery upon the death of a resident might not be extremely large, such relief is incomplete and the deterrent purpose of the Act is not served. "To ensure that nursing homes comply with the Act, the legislature expanded the regulatory and enforcement powers of the Department of Public Health, created civil as well as criminal penalties for violations of the Act, and also provided nursing home residents with several statutory

remedies against nursing homes." Wills, 175 Ill. App. 3d at 841. For example, in addition to a plaintiff's right to recover actual damages, attorney fees, and costs pursuant to section 3--602, the Act provides for a range of both civil and criminal penalties for violations thereof. See 210 ILCS 45/3--305, 3--318 (West 2006) (penalties and fines); 210 ILCS 45/3--311 (West 2006) (suspension or loss of the facility's license); 210 ILCS 45/3--212, 3--702 (West 2006) (criminal penalties); 210 ILCS 45/3--701 (West 2006) (public nuisance actions for injunctions). Further, the legislature has provided for criminal liability for those individuals working in nursing homes who neglect residents. 720 ILCS 5/12--19, 12--21 (West 2006). And, as noted by the court in Marston, here, unlike in Raisl (relied upon by plaintiff), there has been no pronouncement by the supreme court or the legislature that punitive damages are necessary to enforce the statutory scheme and deter wrongdoers. Marston, 389 Ill. App. 3d at 345, citing Raisl, 134 Ill. App. 3d at 175-77.

Second, it would be inappropriate for us to conclude that equity requires punitive damages availability in light of our legislature's action on this issue. Our supreme court has considered and found more appropriate for the legislature's consideration many of the equitable arguments plaintiff and amicus counsel set forth here as favoring survival. For example, the Froud court noted that policy-based arguments concerning the survival of punitive damages claims generally should be presented to the legislature. Froud, 98 Ill. 2d at 335. Specifically, the court considered the "often repeated adage that it is cheaper to kill your victim than to leave him maimed" and the possibility that defendants facing punitive damages claims may delay litigation until plaintiffs die. Froud, 98 Ill. 2d at 335. "Persuasive as these arguments sound, we believe they are better addressed to the General Assembly than to this court in view of the legislature's earlier expression of its views on the matter in the Survival Act and this court's interpretation of that act in Mattyasovszky." Froud, 98 Ill. 2d at

335; see also Ballweg,114 Ill. 2d at 117-18 ("[t]he plaintiff asks that we consider the often repeated adage that it is cheaper to kill your victim than to leave him maimed. While we are sympathetic to his argument, we believe it is being voiced in the wrong forum. It is the General Assembly which should be urged to pass legislation allowing the award of punitive damages in these cases, not the courts").

The Froud court also noted that, during the lower court proceedings in Mattyasovszky and after the supreme court's decision therein: (1) a bill to amend the Survival Act to provide for the survival of punitive damages claims for an injury to the person was defeated in committee; and (2) the Survival Act was reenacted several times without any modification of the provision upon which the court concluded that punitive damages were not recoverable. Froud, 98 Ill. 2d at 335-36. "Under these circumstances, the construction placed upon the Survival Act by Mattyasovszky should be regarded as having been incorporated in the Act." Froud, 98 Ill. 2d at 336. The court noted that changing its construction of the Act by overruling Mattyasovszky would amount to an amendment of the statute, a power that does not lie in the courts. Froud, 98 Ill. 2d at 337.

Arguably, the legislature has similarly spoken here. Specifically, in Harris, the court considered the Act's purpose and stated that, without treble damages, many residents might forgo costly and time-consuming litigation due to advanced age, decreased life expectancy, mental or physical infirmities, lack of financial resources, and/or, even if successful, an uncertain or small recovery. Harris, 111 Ill. 2d at 369-70. The court concluded that these considerations constituted a rational basis for the Act's treble damages provision and that, therefore, the Act's treble damages allowance for negligent acts was not unconstitutional. Harris, 111 Ill. 2d at 369-70. Nevertheless, despite the court's recognition of these constitutionally acceptable rationales for treble damages, the

General Assembly subsequently repealed that provision. In other words, although our supreme court recognized that, absent treble damages, various considerations might discourage a resident from pursuing claims under the Act, the legislature nevertheless repealed the provision. Thereafter, as previously mentioned, the General Assembly rejected an amendment to the Act that would have expressly provided for punitive damages and would have allowed recovery under the Survival Act (91st Ill. Gen. Assem., House Bill 3391, 2000 Sess.). Further, in 2007 and 2008, the General Assembly twice rejected attempts to reinsert the treble damages provision into the Act (95th Ill. Gen. Assem., House Bill 3445, 2007 Sess.; House Bill 5213, 2008 Sess.). In light of this legislative action, it would be inappropriate for us to conclude that equitable considerations warrant survival of punitive damages claims under the Act. See Wills, 175 Ill. App. 3d at 842-43 (despite the Act's provision for punitive damages in the form of treble damages, there is no indication in express or implied terms that the legislature intended to "deviate from its long-standing policy of rejecting punitive damages for wrongful death." Moreover, where the legislature rejected four attempts to amend the Wrongful Death Act to allow for punitive damages, "[l]ogic precludes us *** from ignoring this treatment of the Wrongful Death Act by the legislature and expanding [that act] by holding that the Nursing Home Care Reform Act of 1979 creates, by implication, a cause of action for punitive damages for wrongful death"). Accordingly, there is no basis for concluding that strong equitable considerations require punitive damages to remain available to a plaintiff pursuing a survival action under the Act.

In sum, the Act provides no statutory basis for punitive damages, and no strong equitable considerations require survival of punitive damages claims for violations of the Act. We answer the certified question in the negative.

## III. CONCLUSION

For the foregoing reasons, we answer the certified question in the negative. We remand the cause for further proceedings consistent with this opinion.

Certified question answered; cause remanded.

BOWMAN and O'MALLEY, JJ., concur.